R. R. Bateson, Appellant, v. Marshall County et al., Appellees.

No. 40845.

December 17, 1931.

R. R. Bateson, for appellant.

Joe B. Tye, for appellees.

EVANS, J.—The numbered specifications of negligence are set forth in appellant's petition as follows:

"1. A failure to carry on said grader outfit or road machinery, at the time and place in question, at least two red danger signal lanterns or lights, each capable of remaining continuously lighted for at least sixteen hours.

"2. A failure, at the time and place in question, to place and maintain in a lighted condition at least one danger signal light upon the front and one upon the rear of said road machinery.

"3. The operation of said road machinery, at the time and place in question, without placing and maintaining in a lighted condition at least one danger signal light upon the front and one upon the rear of said road machinery.

"4. The high-handed, heedless, reckless, and illegal disregard of duty in failing to supply and use proper danger signal lights while operating said road machinery after sunset, as is made specific and mandatory by law.

"5. The creating and maintaining of a hidden danger or trap upon the public highway, at the time and place in question, because of a failure to obey the mandatory requirements of law with reference to the maintenance and use of danger signal lights on said road machinery after sunset.

"6. The official misconduct on the part of the Board of Supervisors of Marshall County, Iowa, in failing to require an official bond and undertaking on the part of the road patrolmen for the faithful performance of their duties as provided by

statute and which duties are owing this plaintiff and the public in general.

"7. The official misconduct on the part of the road patrolmen herein in failing to enter into a bond conditioned upon the faithful performance of their duties as provided by statute and as owing this plaintiff and the public in general.

"8. The official misconduct on the part of the Board of Supervisors of Marshall County, and the road patrolmen herein in depriving this plaintiff of the full legal protection he was entitled to, in failing to provide for sureties and a bond or undertaking of any kind on the part of the road patrolmen."

It will be noted that the first five specifications are predicated upon the failure of the grader to carry lights and signals. Specifications 6, 7, and 8 seek to state a case against Marshall County and its Supervisors. These latter specifications were eliminated by the ruling of the court on the motion to strike. We have no occasion to give separate consideration to the motion and to the demurrer inasmuch as both rest somewhat upon the same ground. If either one was properly sustained, there could be no occasion for debate upon the other. Whether defendants, Hanson and Teal, may be rendered liable, is a question not before us. As to them the case is pending in the district court. Nor need we distinguish between the liability of Marshall County and the liability of the Supervisors in view of our conclusion as to the liability of the latter. The liability of the County is predicated upon the liability of the Supervisors. If the latter are not liable, the former can not be so. Whether the converse of this proposition be equally true, is a question not before us and we shall express no view thereon. However, on the question of misjoinder, see Aplin v. Smith, 197 Iowa 388.

I. The alleged liability of the Supervisors is predicated in the first instance upon the operation and effect of Section 4776 of the present Code, which provides as follows:

"4776. *Bonds.* Said patrolmen shall give bond for the faithful performance of their duties, and in such sum as the board may order. Said bonds shall be approved by the board."

This section is a part of Chapter 243, which purports to set forth the duties of the road patrol as follows:

"4774. *Road patrolmen.* The board of supervisors shall cause all highways under their jurisdiction to be patrolled, throughout each road-working season, and at such other times as they may direct, and to this end shall appoint such number of patrolmen as may be necessary to perform such duty."

"4775. *Tenure and Salary.* Such patrolmen shall receive such compensation as the board may determine, shall be subject to the orders of the board, and shall hold their positions at the pleasure of the board."

4776. Copied above.

"4777. *Tools.* The said board shall supply said patrolmen with all necessary tools and equipment, and the patrolmen shall be responsible upon their bond for the care of the same."

"4778. *Duties.* Each road patrolman shall:

"1. Devote his entire time to his duties.

"2. Personally inspect, at least once each week, and oftener if notified of defect in roads or bridges, all roads assigned to him.

"3. Seasonably drag, or cause to be dragged, after each rain, and at such other times as may be necessary, all roads assigned to him.

"4. Keep all sluices, culverts, and bridges and the openings thereof and all side ditches of the road free from obstructions.

"5. Provide such side ditches with ample outlets.

"6. Remove loose stones and other impediments from the traveled part of the highway.

"7. Fill depressions and keep the road free from ruts, water pockets, and mud holes.

"8. Repair the approaches to bridges and culverts and keep such approaches smooth and free from obstruction.

"9. Perform such other duties as the board may direct."

Section 4779 confers upon the road patrol the official character of peace officers and requires them to take oath and wear badges as such peace officers. It will be noted that Section 4776 provides that "patrolmen shall give bond for the faithful performance of their duties". The amount of the bond is left to the discretion of the Supervisors. The patrolmen who are defendants herein had given no bond. Because of this failure the

plaintiff charges the Supervisors with neglect contributing to his injury. The statute specifies no minimum as to the amount of the required bond. The argument for plaintiff is that if the Board had specified the amount of the bond, and if the patrolmen had executed such bond, the plaintiff could have sued upon such bond to recover his damages. The further argument is that because no such bond was given, the Supervisors became liable to plaintiff. Whether such liability of the Supervisors would extend to the full measure of injury suffered by the plaintiff, or only to such amount as the plaintiff could have recovered upon the bond, if one had been given, is not indicated in the argument. The contention seems to be that the Supervisors became liable for the full amount of the damages. If plaintiff's argument is untenable at this point, the error permeates his entire case. The bond required by Section 4776 is known in the general parlance of the cases as a "performance bond". We have held definitely that such a statutory bond has in it no quality of liability insurance; and likewise that a statutory performance bond is limited to the scope of the statute and may not be converted into liability insurance for personal injuries even by its own terms. The reason for such rule is that if additional liability be imposed upon statutory bond, beyond the scope of the statute, the added liability will absorb the penalty of the statutory bond and will thereby render the bond without value for the statutory purpose. This question has received by us very full consideration in two cases: U. S. F. & G. Co. v. Iowa Telephone Company, 174 Iowa 476; Schisel v. Marvill, 198 Iowa 725. These cases have been overlooked in the briefs. They are decisive of the question under consideration at this point. Both opinions are extensive in their discussion of the question, and it would serve no useful purpose for us to repeat the discussion here. Sufficient to say at this point that the statutory bond required by Section 4776, if given, would not have been available to the plaintiff as liability insurance.

■ II. In addition to the duties imposed by Chapter 243, additional duties are imposed upon the patrolmen under Sections 5055-b1, 5055-b2, 5055-b3, and 5055-b4. These are as follows:

"Sec. 5055-b1. No tractor, motor truck, road grader, road drag, or other piece of road machinery operated by gasoline, kerosene, or coal shall be used upon any public highway in this

state which is open to traffic by the public, unless there is carried at least two red danger signal lanterns or lights, each capable of remaining continuously lighted for at least sixteen hours.''

''Sec. 5055-b2. It shall be *the duty of each person charged with the operation* of any tractor, motor truck, road grader, road drag, or other piece of road machinery which is required by the preceding section to carry red danger signal lights, to place and maintain in a lighted condition at least one signal light upon the front and one upon the rear of any such tractor, truck, grader, drag, or other piece of road machinery from the time the sun sets until the time the sun rises the following day, whenever the same is being operated or stationed upon any public highway open to traffic by the public.''

''Sec. 5055-b3. It shall be the *duty of the highway commission*, the *board of supervisors of each county, and each road patrolman to enforce* the provisions of the two preceding sections as to any such tractor, truck, grader, drag or other piece of road machinery under their direction and control, respectively.''

''Sec. 5055-b4. Any person directly chargeable with a duty under the provisions of the three preceding sections, and who fails to perform said duty, shall be guilty of a misdemeanor and upon conviction thereof shall be fined not less than twenty-five dollars nor more than one hundred dollars, or be imprisoned in the county jail not to exceed ten days.''

It will be noted from the foregoing that the duty ''to carry'' and ''to place'' the lights and signals is imposed upon the person operating the grader. In Section 5055-b3 a duty is imposed upon the Highway Commission and upon the Board of Supervisors to ''enforce'' this requirement. The argument for plaintiff at this point is that the failure of the patrolmen to ''carry'' and ''place'' the signals at this particular time became a breach of duty on the part of the Board of Supervisors and a failure to enforce. We think such an interpretation can not be put upon the statute without rendering it absurd. Manifestly the duty thus imposed upon the Highway Commission and upon the Supervisors, is governmental. It contemplates and requires good faith on the part of such officials to give effect to these requirements. It can not mean that every, or any, member of the Highway Commission, or that any member of the Board of Supervisors, must be personally present at every sunset at the place

724

of every road-grader to see personally that the patrolmen "carry" and "place" the signals upon their graders respectively. If the Supervisors of any county were in rebellion against the statutory requirement, or perhaps indifferent thereto, to the extent of encouraging neglect upon the part of the patrolmen, a different question would be presented. Both the Highway Commission and the Supervisors, in the exercise of their governmental duties, had a right to assume that each patrolman in operation of his grader, was performing his full duty under the statute, until the contrary fact was in some manner brought to their attention. The mere failure of these patrolmen to carry lights and signals at this particular time, did not of itself constitute a breach of duty on the part of the Supervisors.

 III. The further contention of the plaintiff is that liability may be predicated upon Section 5026, which provides as follows:

"5026. *Liability for damages.* In all cases where damage is done by any car driven by any person under fifteen years of age and in all cases where damage is done by the car, driven by consent of the owner, by reason of negligence of the driver, the owner of the car shall be liable for such damage."

The contention is that Marshall County is a "person" and that it was the owner of this grader; that the same was a "car" because propelled by gasoline; and that therefore Marshall County became liable under this section. The grader in this case consisted of a combination of a caterpillar-tractor and a steel blade sixteen feet long and the usual accessories. Under this section a "car" means primarily an automobile. How far it may be fairly expanded to include other motor vehicles, might become a close question in a particular case. A "car" is ordinarily a thing of speed. A road-grader propelled by a caterpillar-tractor, is a road implement and a thing of power. It carries no speed hazard. In its locomotion, it is a mere ox upon the road. In this case it was a mere obstruction to the travel. It presented no more danger while in motion than it did while at rest. The collision herein was with the outer end of the grader-blade. For a definition of the word "car", as used in this statute, we have no better guide than the every day parlance of automobile users. We think it safe to say that no informed

automobile user would refer to a caterpillar-road-grader, as a "car". See also Code 4863.

Quite apart even from this question, and reading the statute, in the light of its history and of its purpose we do not think that it has any reference to the ownership of public property by a municipality, when used solely for governmental purposes. We hold accordingly.

The foregoing comprises the more persuasive points in appellant's plausible argument. Other features of the argument need not be considered. What we have here said is necessarily determinative of the result.

The judgment below is accordingly affirmed.

FAVILLE, C. J., and MORLING, KINDIG, and GRIMM, JJ., concur.