MARTHA SHIRKEY, Appellant, v. KEOKUK COUNTY et al.,
Appellees.

No. 44022.

OCTOBER 26, 1937.

OPINION ON REHEARING OCTOBER 25, 1938.

1160

C. J. Lambert, and F. M. Beatty, for appellant.

Ralph H. Goeldner, County Attorney, and Robert J. Shaw, for appellees.

PARSONS, J.—Plaintiff, appellant herein, Martha Shirkey, brought suit against Keokuk County, and against Ned Wood, J. Forest Embree and Fred X. Kendall, members of the Board of Supervisors of said County, and William Kelly. Suit was commenced on the 24th day of November, 1936, and later a substituted petition was filed in said action.

The petition set forth that on December 4, 1935, at more than thirty minutes after sunset on said day, the plaintiff was riding in a Ford V-8 automobile owned and driven by her husband and traveling north on the county road about one and a half miles northwest of Richland, in Keokuk County, Iowa; that William Kelly, defendant, was an employee of Keokuk County, under the direction of the supervisors, consisting of Wood, Embree and Kendall, and he was driving or operating a tractor on the left or east side of the road traveling in a southerly direction; that Kelly negligently, recklessly, carelessly, and unlawfully, and in an incompetent manner, drove or operated the tractor pulling a maintainer, at a high rate of speed for such a vehicle, without lights as required by law, or without lights being carried or displayed upon said tractor, or upon the maintainer; and in driving on the left side of the road, when the evening was quite dark, and thereby causing the tractor to crash into the automobile in which the plaintiff was riding; and by reason of such careless, reckless, negligent, unlawful and incompetent operation of said tractor and maintainer by Kelly a collision was caused, whereby plaintiff was crushed, broken, rendered sick, ill and disabled.

The petition alleged the tractor and maintainer were the property of Keokuk County, and that Kelly was hired by said county and the Supervisors thereof, to operate said machinery, when he was incompetent and incapable of handling same at the time of the collision; and that it was dangerous to the public for him to be allowed to operate such machinery on the highway, all

of which facts were well known to the defendants Wood, Embree and Kelly, and to Keokuk County and the Board of Supervisors prior to the time Kelly was hired, and prior to the time of the collision.

The petition further set out that the county road referred to was open to traffic by the public; that at the time of the collision the said tractor did not carry and was not equipped with two red danger signals, lanterns or lights, each capable of remaining continuously lighted for at least sixteen hours; and that at the time of the collision the maintainer was without two red danger signals so displayed, and did not carry, nor was equipped with, any red danger signals, lanterns or lights. It alleged that the supervisors knew the tractor and maintainer were not equipped with two red lights, each capable of remaining continuously lighted for at least sixteen hours, and knew that said tractor was being frequently operated after sunset and before the next following sunrise upon a public highway open to traffic by the public.

The plaintiff charged the supervisors with knowledge of these things, and alleged that by reason of the careless and incompetent operation of this tractor and the maintainer by Kelly, and under the direction of the board of supervisors, Wood, Embree and Kendall, plaintiff suffered great injuries. The petition set out items of damage, expenses incurred, and prayed for judgment in the sum of $26,446.60, with interest.

Three demurrers were filed: one demurrer of William Kelly, another demurrer by Keokuk County, and a third demurrer by the Board of Supervisors.

The grounds of the demurrer of Keokuk County were: (1) that it was an attempt to impose civil liability on the defendant, Keokuk County, for the alleged negligence of a governmental duty, and that the defendant Keokuk County could not be held responsible for the negligence of its officers or employees; (2) that plaintiff was attempting to hold Keokuk County liable for the alleged negligence of its employees and agents in the operation of a tractor and maintainer belonging to and operated on the roads of said county, and was an attempt to hold the defendant county responsible for the performance of a governmental duty imposed by law; (3) that the defendant is a governmental agency and as such is not responsible for the torts of its officers, employees, agents or servants; (4) that there is no

1162

liability fixed by statute on the defendant county for damages in a civil suit as a result of negligence on the part of its officers, employees, agents or servants; (5) that the defendant Keokuk County is a *quasi* municipal corporation, and a creature of statute, suable only when statutory provision is given, and that the facts set out in plaintiff's petition do not bring the case within any statute which allows suit against a county, and that there is no statute in this state under which plaintiff may recover from the defendant Keokuk County, for the negligence of its officers or employees while engaged in the maintenance of the public highways; (6) that the facts stated in plaintiff's substituted petition do not entitle her to the relief demanded, or to any relief; (7) that the plaintiff in her substituted petition seeks to impose upon the defendant county a liability which is unknown to the law; (8) that there are no facts set forth in plaintiff's substituted petition that shows Keokuk County was guilty of any negligence for which it could be required to respond in damages to the plaintiff; (9) that there are no facts set forth in plaintiff's substituted petition that show that Keokuk County, or any of its officers or employees did any act or omitted doing any act which caused damages to plaintiff for which Keokuk County is liable in a civil suit for damages; (10) that the defendant Keokuk County is an involuntary subdivision of the state created by statute for governmental purposes and is immune from civil liability for negligence in the performance of its governmental duties.

The members of the board of supervisors filed a demurrer on ten grounds, to wit: (1) that it was an attempt on the part of plaintiff to impose liability on the three supervisors for alleged negligence in the performance of a governmental duty; (2) that there is no liability fixed by statute upon said supervisors for damages in a civil case as the result of alleged negligent operation of a county tractor and road maintainer upon the highways of the county; (3) that the supervisors were officers of Keokuk County, said county being an involuntary territorial and political division of the sovereign state and created by statute for governmental purposes, and that since Keokuk County is not liable for damages for performing its governmental acts in a negligent manner, it follows as a matter of law that the defendants Wood, Embree and Kendall, being its officers as members of its board of supervisors, cannot be held liable for such

alleged negligence; (4) that there is no statute which allows or permits suit against the county or against the individual members of its board of supervisors to recover damages against the defendants Wood, Embree and Kendall, for their negligence in the performance of a governmental duty of causing a tractor and road maintainer to be operated upon the roads of the county; (5) that the alleged negligence of the defendants Wood, Embree and Kendall was in the actual performance of a governmental function imposed by statute and no legal liability attaches therefor; (6) that the facts stated in plaintiff's substituted petition do not entitle the plaintiff to the relief demanded, or to any relief; (7) that plaintiff's substituted petition seeks to impose upon said defendants a liability which is unknown to the law; (8) that there are no facts set forth in plaintiff's substituted petition that show the defendants Wood, Embree and Kendall are or were in any way guilty of negligence for which they could be required to respond in damages to the plaintiff; (9) that there are no facts in plaintiff's substituted petition that show said defendants did any act or omitted doing any act which caused damage to plaintiff for which said defendants are liable in a civil suit for damages; (10) that Keokuk County is an involuntary subdivision of the state created by statute for governmental purposes and is immune from civil liability for negligence in the performance of its governmental duties and this immunity extends to its officers, agents or employees.

The demurrer of William Kelly set forth practically the same grounds as set forth in the demurrer of the supervisors of Keokuk County.

The demurrers came on for hearing, and after argument were submitted to the court, and each and all of said demurrers were sustained, to which plaintiff excepted.

The plaintiff elected to stand upon her substituted petition, and on the same day judgment against plaintiff in favor of defendants was entered for costs. Plaintiff excepted. Appeal was served in proper time, and this case is here for hearing on this record.

We will first discuss the question of the liability of the county, in cases of this character, and decide the questions arising under the demurrer of the county.

This court has had these propositions before it in various forms from an early date. In Wilson & Gustin v. Jefferson

County, 13 Iowa 181, this court held that where the question was up on demurrer by the county, claiming nonliability of the county, that the county was liable for injuries caused by the unsafe condition of a bridge, and this decision stood and was recognized in a way binding until in the case of Post v. Davis County, 196 Iowa 183, 191 N. W. 129, 194 N. W. 245, where there was a judgment for damages against the defendant county for personal injuries arising out of a defective county bridge. The county appealed from the ruling of the lower court, and this court reversed the district court, and the rule was thereby changed.

However, in Kincaid v. Hardin County, 53 Iowa 430, 433, 5 N. W. 589, 591, 36 Am. Rep. 236, where Hardin County was sued for injuries in a courthouse due to the unskillful and negligent manner in which a stairway was constructed, and because of the gross negligence of the defendant county in not lighting and properly guarding said stairway, whereby the plaintiff, without fault, fell from the top of the stairway to the floor below and was severely injured, the court held that the action could not be maintained. In this Hardin County case the opinion had this to say of the case of Wilson & Gustin v. Jefferson County, supra, to wit:

"That case has been followed in a number of other cases down to the present time, although exhaustive arguments have been made insisting that it should be overruled, as against not only the weight but the whole current of authority. As often as the question has been made, the rule has been adhered to without deviation."

Calling attention to what was said in Huston v. Iowa County, 43 Iowa 456, 459, the court quoted:

"We have no inclination now to review, either for the purpose of fortifying or overturning a case which has for so long a time, in so many instances, and in so deliberate a manner, been sanctioned and followed."

The plaintiff in the Hardin County case insisted that the principles laid down in the Jefferson County case should control. In the Hardin County case the court said:

"It must be admitted that a distinction in principle be-

tween an injury resulting from a defective county bridge, and one caused by a defective and improperly constructed courthouse, is not very plain nor easily demonstrated. But as the line of decisions in this state as to the liability for defective bridges stand almost if not quite alone, as we have seen, we have no disposition to carry the doctrine further than is necessary to sustain the decisions of the court, which have stood so long that it may truthfully be said they have the implied sanction of the lawmaking power and the people of the State.''

Again, in Krause v. Davis County, 44 Iowa 141, the court said, when the rule in the Jefferson County case was attacked:

''The first decision on this subject was made in Wilson & Gustin v. Jefferson County, 13 Iowa 181, and the last in Huston v. Iowa County, [43 Iowa 456], not yet reported. Between these there have been some ten other cases involving the same question determined. During this time the members of the court have frequently changed, notwithstanding which the first decision made has been steadily adhered to, and at no time has there been a dissenting opinion filed. Besides this, the decisions have been made at intervals through a period of fifteen years, and the General Assembly has not seen proper to in any manner, as it was entirely competent to do by legislative enactment, relieve counties of this burden. We must, therefore, presume that the principle announced in these decisions has met the approbation of the people of the State.''

Since that time Post v. Davis County, 196 Iowa 183, 186, 191 N. W. 129, 131, 194 N. W. 245, has been decided. This was an action for damages against the defendant county for personal injuries to plaintiff resulting from a defective county bridge. There was a verdict for plaintiff and judgment thereon, and same was reversed by the supreme court. The opinion by Judge Evans pointed out:

''The general purpose of the new highway legislation is to unify the development and improvement of the highways of the state into one general and consistent scheme. This scheme contemplates a division of the burden, as between county and township and state and Federal government. The supreme administrative authority is retained by the state, and is exercised through its duly appointed officials, the state highway commis-

sion. The local administrative authority is vested largely in the board of supervisors, and to some extent in the township trustees. All acts of the board of supervisors are submitted to the advance approval of the highway commission. While power is conferred upon the boards to build bridges in their respective counties, yet this power is subordinated to the supervision of the highway commission, and must be exercised pursuant to plans and specifications furnished by such commission. The roads of a county are classified as primary and secondary, and as county and township. But the supreme authority in the classification is the highway commission of the state, and not the board of supervisors. This classification is adopted for the purpose of * * * acquiring uniformity and connection of highways as between adjoining counties.''

The opinion then points out how the board is to construct all bridges upon township or county roads, and says, ''also there are *no* county bridges, within the meaning of the law as it was prior to 1913. In other words, it may be said with equal plausibility that *all* bridges are county bridges under the new law, and that none are county bridges within the meaning of the law as it was.''

It was held in this opinion that the county was no longer liable for a defective county bridge on any ground whatever. All other forms of liability against the county had been excluded by the decisions.

This court had occasion to pass upon some of these questions in the case of Larsen v. Independent School District of Kane Township, 223 Iowa 691, 272 N. W. 632, in an opinion filed April 6, 1937. In this case it was attempted to hold a school district liable for the loss of life of plaintiff's decedent in an Armistice Day celebration, by reason of the negligence of the school district officers, and by the claimed maintenance of a nuisance. Many of the authorities were not cited in this case, but the result of the case was that there was no liability on the district, by reason of the failure of the officers, or the negligence of the officers, on account of the fact that the school district was a *quasi* corporation and could not be held for the negligence of its officers. There really was no evidence in that case, however, of any nuisance having been maintained.

In the case of Kincaid v. Hardin County, 53 Iowa 430, 431,

supra, this court quoted approvingly from Addison on Torts, Vol. 2, page 1298, as follows:

"A plainly marked distinction is made, and should be observed, between municipal corporations proper, as incorporated villages, towns and cities, and those other organizations, such as townships, counties, school districts and the like, which are established without any express charter or act of incorporation, and clothed with but limited powers. These latter political divisions are called *quasi* corporations, and the general rule of law is now well settled that no action can be maintained against corporations of this class by a private person, for their neglect of public duty, unless such right of action is expressly given by statute."

The case then says, "That municipal corporations proper are liable to an action for damages in such cases is settled beyond all question", and further says, "We are aware that this distinction has not been taken in any of the cases determined by this court, but it seems to us to be sound, and unwilling as we are to extend the liability of these *quasi* corporations further than already obtains, which, if done, must inevitably lead to inextricable complications arising in actions for all possible negligent acts, we conclude that the ruling of the District Court should be affirmed." Thus the court absolves the county from liability.

Section 65 of Vol. 1 of Fletcher's Cyc. of Corporations, is as follows:

"Counties are involuntary organizations, as political subdivisions of the state, for governmental purposes. While, to a certain extent, they are invested with corporate powers, such as holding property and making contracts for county purposes, because of their imperfect powers in many states they are not corporations in the proper sense, but are properly designated as quasi-corporations, or their governing and controlling boards, variously named, are the quasi-corporations and act as such. In other states, however, they are public or municipal corporations. Whether or not a county is a public corporation or a political subdivision, it is not within some of the statutory classifications of corporations.

"For the same reason which applies to counties, towns or townships are generally considered quasi-corporations. Limited

powers are conferred upon them, such as the power to make certain contracts, and to sue and be sued. Town supervisors, and overseers or trustees of the poor, have also a quasi-corporate status. There are instances of towns incorporated and with special franchises. The word 'town' is not here used in the sense of an incorporated city or village.

"It has been said in a preceding section that school districts are not to be regarded as private corporations, but so far partake of the character of public corporations that they are deemed to belong to the class of quasi-corporations, or the school trustees or boards are so regarded, unless the legislature has made them a corporation. As to the extent to which they are to be considered as endowed with corporate capacity, they have been held to be quasi-corporations created by statute for the purpose of executing the general laws and policy of the state, which require the education of all its youth. In some states, however, they are public corporations."

What does the Hardin County decision mean? It would seem that it means that political corporations, such as counties and school districts, are not liable as municipal corporations are, or as individuals are. That it was meant in these decisions to exclude such actions as are here presented, actions in tort, from holding these *quasi* corporations liable. It does not go to the peculiar form of the negligence, or the wrong that was claimed to have been committed, but it goes to the question of liability of such *quasi* corporations of this character, in that class of cases arising from injuries such as are claimed here, and out of the claimed negligence or wrongful acts, whether by nonfeasance, misfeasance, or malfeasance, and excludes the right of recovery upon any such grounds as against any such corporations. Such is the logic of the rule. This conclusion is fully supported, we think, by Kincaid v. Hardin County, 53 Iowa 430, 5 N. W. 589, 36 Am. Rep. 236; Larsen v. Ind. School Dist. of Kane Twp., 223 Iowa 691, 272 N. W. 632; Post v. Davis County, 196 Iowa 183, 191 N. W. 129, 194 N. W. 245; Lane v. Dist. Twp. of Woodbury, 58 Iowa 462, 12 N. W. 478; Green v. Harrison County, 61 Iowa 311, 16 N. W. 136; Nutt v. Mills County, 61 Iowa 754, 16 N. W. 536; Lindley v. Polk County, 84 Iowa 308, 50 N. W. 975; Dashner v. Mills County, 88 Iowa 401, 55 N. W. 468; Wenck v. Carroll County, 140 Iowa 558, 118 N. W. 900; Snethen v. Harrison

County, 172 Iowa 81, 152 N. W. 12; Hilgers v. Woodbury County, 200 Iowa 1318, 206 N. W. 660.

In Hilgers v. Woodbury County, supra, the court said:

"It is a well established rule in this state that counties are not liable for torts growing out of the negligent acts of their agents or employees. The rule has been applied in a variety of cases and under different circumstances, and it is not necessary that we review the authorities so holding. No statute has been enacted extending the liability of counties to meet such circumstances as are disclosed in the instant case. The trial court was correct in holding that the county could not be held liable for the torts of its officers, agents, or employees." Citing Soper v. Henry County, 26 Iowa 264; Kincaid v. Hardin County, 53 Iowa 430, 5 N. W. 589, 36 Am. St. Rep. 236; Green v. Harrison County, 61 Iowa 311, 16 N. W. 136; Lindley v. Polk County, 84 Iowa 308, 50 N. W. 975; Packard v. Voltz, 94 Iowa 277, 62 N. W. 757, 58 Am. St. Rep. 396; Wilson v. Wapello County, 129 Iowa 77, 105 N. W. 363, 6 Ann. Cas. 958; Wenck v. Carroll County, 140 Iowa 558, 178 N. W. 900; Wood v. Boone County, 153 Iowa 92, 133 N. W. 377; 39 L. R. A. (N. S.) 168, Ann. Cas. 1913D, 1070; Snethen v. Harrison County, 172 Iowa 81, 152 N. W. 12; Cunningham v. Adair County, 190 Iowa 913, 181 N. W. 20; Post v. Davis County, 196 Iowa 183, 191 N. W. 129, 194 N. W. 245; Brown v. Davis County, 196 Iowa 1341, 195 N. W. 363; Van de Walle v. Tama County, 198 Iowa 1330, 201 N. W. 44; Board. of Com. of Hamilton County v. Mighels, 7 O. St. 109.

Snethen v. Harrison County, 172 Iowa 81, 152 N. W. 12, 13, lays down the rule that if counties are to be made liable for negligence in the construction and maintenance of public highways, as distinguished from bridges and the approaches thereto, it must be by legislative enactment. For more than a half century this court has persistently and consistently refused to declare a county liable for negligence in the performance of its governmental functions, with the single exception of negligence in the construction and maintenance of bridges and approaches thereto.

The opinion says, " 'Counties are involuntary political or civil divisions of the state, created by general statutes, to aid in the administration of the government. They are essentially public in their character and purposes. They are simply govern-

mental auxiliaries, created bodies corporate "for civil and political purposes only." Rev. §221. To the statute they owe their creation, and the statute confers upon them all the powers which they possess, prescribes all the duties which they owe, and imposes all the liabilities to which they are subject.' " And then says, " 'It is for this reason that they are ranked among what have been styled quasi corporations. This designation is employed to distinguish them from private corporations aggregate, and from municipal corporations proper, such as cities, acting under general or special charters, more amply endowed with corporate life and functions, conferred in general at the request of the inhabitants of the municipality for their peculiar and special advantage and convenience. The decisions of the courts in every state of the Union, recognizing this distinction, hold incorporated cities and towns to a much more extended liability than they do counties, school and road districts, even where the latter are declared to be invested with corporate capacity.' "

■ We do not see how, in view of these holdings of our court, that counties and school districts, which are only quasi corporations, can be held liable in actions resulting from the negligence or misdoing of any kind, of any of their officers, agents or employees.

There is a distinction between counties and incorporated towns and cities; the latter having full corporate capacity; they are held liable for their acts. For instance, cities and towns must keep safe streets, and it is negligence for them not to do so, and in that event, one injured by the negligence of the city to keep its streets in a safe condition, may have his action against the city or town.

In this case many decisions have been cited to us from other states, and from this state, laying down the rule as against cities and towns. But in our view of the case these decisions are not applicable here on account of the differences between the character of the corporations, cities and towns and counties and school districts, the latter two being merely quasi corporations, against which actions of this character cannot be maintained.

■ The question as to whether or not the corporation is exercising governmental functions does not have, in our view, the same bearing in this case that it would have in a similar case against a city or town. The city or town may, in the exercise

of its governmental function, be absolved from liability. The absolution from liability of a county or school district, does not rest upon this ground; it rests upon the ground that the county or school district is simply a quasi corporation and not clothed with full corporate powers, and it cannot be sued in cases of this character without regard to the question whether or not they are in the exercise of a governmental power or duty. .

Another question involved here is as to the effect of the statutes cited and relied upon by the plaintiff in this action. These sections are 5055-b1, 5055-b2 and 5044 of the Code of 1935. The first two sections are as follows:

"5055-b1. Road machinery—lights required. No tractor, motor truck, road grader, road drag, or other piece of road machinery operated by gasoline, kerosene, or coal shall be used upon any public highway in this state which is open to traffic by the public, unless there is carried at least two red danger signal lanterns or lights, each capable of remaining continuously lighted for at least sixteen hours.

"5055-b2. Number of lights—duty to maintain. It shall be the duty of each person charged with the operation of any tractor, motor truck, road grader, road drag, or other piece of road machinery which is required by section 5055-b1 to carry red danger signal lights, to place and maintain in a lighted condition at least one signal light upon the front and one upon the rear of any such tractor, truck, grader, drag, or other piece of road machinery from the time the sun sets until the time the sun rises the following day, whenever the same is being operated or stationed upon any public highway open to traffic by the public."

We might also add thereto Section 5055-b3 which makes it the duty of the highway commission and board of supervisors of each county, and each road patrolman to enforce the provisions of above sections as to any tractor, truck, grader, or drag or other piece of road machinery under their direction and control. And section 5055-b4 provides punishment for violation of said duties.

Such being the statutes, we do not see how it can be held possible that these statutes in any way alter the propositions arising on account of the character of such corporations as counties and school districts.

In Bateson v. Marshall County, 213 Iowa 718, 723, 239

N. W. 803, 805, two patrolmen were operating a grader in Marshall County, and the individual members of the board of supervisors were made parties, as well as Marshall County. There was a motion to strike the alleged causes of action against Marshall County and the individual members of its board on the ground of misjoinder; likewise a demurrer by the same defendants to the petition as a whole. The injured claimed in the petition damages to an automobile in a collision on the highway with a caterpillar road-grader after sunset, alleging that the statutory provisions requiring lights to be displayed after sunset had not been observed. The lower court sustained both the motion and the demurrer, and plaintiff appealed, and this court affirmed the lower court in an opinion by Judge Evans, who said:

"It will be noted from the foregoing that the duty 'to carry' and 'to place' the lights and signals is imposed upon the person operating the grader. In Section 5055-b3 a duty is imposed upon the Highway Commission and upon the Board of Supervisors to 'enforce' this requirement. The argument for plaintiff at this point is that the failure of the patrolmen to 'carry' and 'place' the signals at this particular time became a breach of duty on the part of the Board of supervisors and a failure to enforce. We think such an interpretation cannot be put upon the statute without rendering it absurd. Manifestly the duty thus imposed upon the Highway Commission and upon the Supervisors, is governmental. It contemplates and requires good faith on the part of such officials to give effect to these requirements. It cannot mean that every, or any, Member of the Highway Commission, or that any member of the Board of Supervisors, must be personally present at every sunset at the place of every road-grader to see personally that the patrolmen 'carry' and 'place' the signals upon their graders respectively. * * * Both the Highway Commission and the Supervisors, in the exercise of their governmental duties, had a right to assume that each patrolman in operation of his grader was performing his full duty under the statute, until the contrary fact was in some manner brought to their attention. The mere failure of these patrolmen to carry lights and signals at this particular time, did not of itself constitute a breach of duty on the part of the Supervisors."

As further supporting the conclusions arrived at in reference to the county's liability, we have examined 8 Iowa Law

Bulletin, page 267, wherein, commenting on the overruling of the case of Wilson & Gustin v. Jefferson County, 13 Iowa 181, it speaks of having so often been distinguished by criticism, and finally says as to this, ''Only three other states seem to have adopted the rule now overthrown in Iowa. Maryland,—Baltimore City v. Baker, 44 Md. 1; Anne Arundel City v. Duckett, 20 Md. 468, 83 Am. Dec. 557; Gehringer v. Lehigh City, 231 Pa. 497, 80 Atl. 987, [35 L. R. A. (N. S.) 1127].'' The discussion also says, in speaking of House v. Indiana Board of Commrs. of Montgomery City, 60 Ind. 580 [28 Am. Rep. 657], holding to the opposite rule, ''This and several later cases were, however, overruled.'' Board of Commrs. of Jasper City v. Allman, 142 Ind. 573, 42 N. E. 206, 39 L. R. A. 58.

Another article, written by Buell McCash, in 10 Iowa Law Bulletin, at page 16, treating of the ex delicto liability of counties in Iowa, goes thoroughly over the decisions in the Jefferson County case, and among other things shows that the decision was arrived at by a misconstruction of an old English case entitled Russell v. Inhabitants of the County of Devon, 2 T. R. 667, the misconstruction being in Grant on Corporations, and was taken by the judge as the doctrine of the original decision which was to the contrary.

This article takes up the history of these cases, including Cunningham v. Adair County, 190 Iowa 913, 181 N. W. 20, and Post v. Davis County, 196 Iowa 183, 191 N. W. 129, 194 N. W. 245, and points out: ''After some sixty years' continuance the rule in Wilson & Gustin v. Jefferson County [13 Iowa 181] was wholly abrogated.''

So in view of these matters hereinbefore set forth, we are of the opinion that the demurrer on the part of Keokuk County, was rightfully sustained.

Attempt is made to hold the supervisors liable by reason of the fact that they employed a man who was not competent to run the tractor. The action of the board of supervisors was in the performance of a governmental duty, and hence cannot be made the basis of an action. Whatever injury was inflicted upon plaintiff, was caused by reason of a collision between the tractor being operated by one Kelly, and the automobile in which plaintiff was riding. There certainly can be no requirement for the board of supervisors of the county, or any other supervising officer, who hires an employee, to follow him up and see that

he does things he is required to do in the performance of his duties. It requires a man of only ordinary intelligence to obey these rules. So that the injury here only happened by reason of the claimed negligence of Kelly in operating the tractor.

In Packard v. Voltz, 94 Iowa 277, 281, 62 N. W. 757, 759, 58 Am. St. Rep. 396, it is held that the county is not liable for negligence in constructing a drain across a highway. As it must act through agents, the agents cannot be liable where the principal is not, though the agent felt malice in doing such work.

The work in this case was the construction of a ditch or drain across a highway. In the opinion in that case the court held the county was not liable, and therein said:

"Legally, the county justifies, in that it has done no act for which it is liable, and hence its agent, through whom it did the act, is for the same reason justified. The same public policy that would give justification to the corporation would extend it to the legitimate means for doing the act. Extended citations might be made as to the liability of servants where both the servant and the employee are negligent, and where such liability is joint, but they do not to any great extent control this case. The case is peculiar because of the exceptional rule which operates to excuse the county from the general rule as to negligence. Importance is attached to the fact that the petition shows that the acts were done maliciously. The averments of malice are as to the defendants Ray and Voltz, and they only show the personal feelings under which they acted. From the petition it is clearly manifest that without the malice the results would have been the same, for it does not appear that the board of supervisors, in its purpose to make the change in the highway, acted otherwise than in good faith, and, independent of the malicious intent."

In Gibson v. Sioux County, 183 Iowa 1006, 1008, 168 N. W. 80, the action was for personal injuries sustained upon a highway, by reason of obstructions negligently placed and permitted and left unguarded by the defendants, as alleged. There was a demurrer to the petition, which was sustained, from which plaintiff appealed.

The highway was located between, or upon the county line of Sioux and O.'Brien Counties, and these two counties were joined as defendants, along with a representative of the board of

supervisors, and their employee Gardner. The obstructions were sand and gravel which had been hauled upon the highway for the purpose of building a cement bridge or culvert. The court held the county not liable, and said as to the officers:

"It is argued by appellant that, even though the counties be not liable, yet the members of the respective boards of supervisors and their employee, Gardner, are liable, in that their duties were ministerial, and were negligently performed. We have held to the contrary."

The opinion quoted from Snethen v. Harrison County, 172 Iowa 81, 87, 152 N. W. 12, is as follows:

"Agents who perform the governmental functions are no more responsible than an artificial body,—the corporation for which they acted. We see no reason for departing from any of these established rules. The trial court was right in sustaining the demurrers."

The Gibson opinion also quoted from Wood v. Boone County, 153 Iowa 92, 99, 133 N. W. 377, 39 L. R. A. (N. S.) 168, Ann. Cas. 1913D, 1070, as follows:

"It must certainly be an anomalous doctrine that would exempt a corporation itself from liability for the doing of a lawful act in a negligent manner upon the ground of its compulsory agency in behalf of the public welfare, and at the same time affix liability upon its agent for precisely the same acts done under express authority. We think an instance of such liability is not to be found."

The Snethen case also held that, "unless our new road law imposes liability upon the county either expressly or by fair implication, there can be no recovery. Counties, unlike cities and incorporated towns, are not, as a rule, held liable for torts committed by them, so long as they are acting within the scope of their governmental powers. They are quasi municipal corporations engaged in the performance of governmental functions, and are not responsible for the neglect of duties enjoined upon them, in the absence of statute giving a right of action."

The opinion further stated, "The opinion of the court is that the court below rightly held that the county was not liable to the plaintiff in respect to the injury for which his action was

1176

brought. *If the county ought to be held liable in such a case, the remedy must be sought from the legislature."*

As the rule in this state is, the agents of the county and the officers are not liable because the county isn't liable, and hence, if it is desired to make the agents liable, the appeal should be to the legislature and not to the courts.

In a case as late as 1934, Hibbs v. Ind. School Dist., 218 Iowa 841, 843, 251 N. W. 606, 607, this court held, that the principle that when the officers, servants, or agents of a municipality are engaged in performing a governmental act for and on behalf of the municipality they are not liable in damages consequent on their negligence in doing the act, applies to a person who, with the knowledge and acquiescence of a school board, was operating for the school district a bus in the transportation of children to and from school, even tho the person so operating the bus was acting at the time in lieu of the person with whom the district had actually contracted for the transportation, In this case the court said :

"No case against an employee of a school corporation directly involving personal liability on his part for negligence causing injury to a pupil has been called to the attention of the court. No reason would, however, seem to exist for granting exemption from liability to the employees of other municipal corporations whose negligence has resulted in injuries or damages for which relief is sought, where the same arose while the municipality was engaged in the performance of a governmental function and to deny the same to an employee of a school corporation when similarly engaged."

There are numerous cases cited in this opinion, and in the other opinions referred to as to the exemption of the officers and employees of county or school districts, on account of negligence in the performance of their duties.

Boiled down, the allegations of the petition show that the only thing that contributed to the injury here was the collision between the automobile and the tractor. That was possibly through the personal negligence of Kelly. He, however, did not have his lights lighted, that is true, but the statutes no more hold the county liable, and no more hold him liable when engaged in that capacity, than it would for any other negligent act.

Hence, on the whole case, we conclude that not only was

the court right in sustaining the demurrer of the county, but it was right in sustaining the demurrer of the supervisors, and in sustaining the demurrer of Kelly, and for the reasons pointed out, the decision below should be and is hereby affirmed.—Affirmed.

ANDERSON, KINTZINGER, STIGER, and DONEGAN, JJ., concur.

HAMILTON, C. J., takes no part.

MITCHELL, J. (dissenting)—I agree with the opinion that the lower court was right in sustaining the demurrers of Keokuk County and the Board of Supervisors, but believe that the demurrer of the employee of the county, Kelly, should have been overruled.

In the majority opinion reliance is placed upon the case of Hibbs v. Independent School District, 218 Iowa 841, 251 N. W. 606. At the time that decision was rendered I was a member of this court, but I did not then and do not now agree with the holding in that case. In that case Mrs. Mary Wilson was the owner of the school bus and the driver of the bus at the time the plaintiff, a pupil in the Green Mountain rural school, was injured. The alleged negligence was the failure of the driver to close securely the door of the bus and an alleged defect in the latch of the door. The trial resulted in a directed verdict for the defendant, Independent School District, and a judgment against Mrs. Mary Wilson for $750. On appeal the judgment against Mrs. Mary Wilson was reversed, the court stating, 218 Iowa 841, at page 845, 251 N. W. 606, 608:

"Many cases are cited above to support the practically universally recognized rule that the exemption from liability in cases of this character applies as well to the school corporation, its officers, and, upon principle, it must be held to apply to its employees. Had the husband been driving the bus, it would have to be conceded that he, under the circumstances of this case, would be immune from liability. Appellant, with the knowledge and acquiescence of the school board, was performing the identical functions and rendering the same service as her husband would have rendered. If not technically an employee of the district, it is only because her husband, whose place she had taken, sustained a technical contractural relation thereto. No

case directly in point has come under our observation. The rule of nonliability exists because the functions being performed are for the common good of all without any special corporate benefit or profit. No distinction in principle can be made upon the basis of which the general rule of nonliability shall not be applied to the facts of this case.''

Before proceeding with an analysis of this decision, it would be well to pause and see just where such a pronouncement of law will eventually lead. It is the writer's belief that this is the only Iowa case where the driver and owner of a motor vehicle has been excused for negligent operation of his vehicle. The mantle of protection of governmental function granted Mrs. Mary Wilson gave her complete immunity for negligent operation of her own school bus. If this be the law, then the owner and operator of a motor vehicle need no longer pay any attention to the law of the road, or traffic rules and regulations, if in such operation of his motor vehicle he is engaged in a governmental function. I do not believe that such a rule of law has any basis in reason or authority. In fact, the general rule that the employee of a municipal corporation is liable to a third person injured by his negligent act of misfeasance, was the law of Iowa until the decision in the Hibbs case. Probably the best statement of the law is contained in the case of Rowley v. City of Cedar Rapids, 203 Iowa 1245, 1250, 212 N. W. 158, 160, 53 A. L. R. 375. Here the city councilman Kennedy was being driven in a city-owned automobile to the city hall to look after city business, and the plaintiff was struck by this automobile on the highway. Altho the demurrer of the City of Cedar Rapids was sustained and this ruling was affirmed by the supreme court, the ruling on the demurrer filed by councilman Kennedy which was also sustained by the lower court, was reversed. In that case the court said:

''With respect to the liability of the defendant Kennedy under the allegations of the petition, a somewhat different question is presented. It is not questioned but that the allegations were sufficient to show responsibility on his part for the alleged negligence of the driver of the car. The demurrer on his behalf raised only the question that, since it was alleged, as it was claimed, that Kennedy was in the performance of his official duty, and in the exercise of a governmental function of the city,

he was not liable for negligence. If it should be conceded, as the demurrer assumed, that Kennedy was engaged in the performance of a governmental duty in proceeding from one point to another on the city's business, still we think the demurrer on his behalf was improperly sustained.

"We have held, it is true, that an agent who performs a governmental function on behalf of a county is no more responsible for negligence in so doing than the corporation for which he acts. Snethen v. Harrison County, 172 Iowa 81, 152 N. W. 12; Gibson v. Sioux County, 183 Iowa 1006, 168 N. W. 80. In these cases, negligence was charged on the part of the members of the board of supervisors in respect to permitting various defective conditions to exist in a public highway. In great measure, the acts charged as negligence were acts of nonfeasance, and they all related to alleged negligence in respect to the condition of the highway and the things done or omitted in preparing it for use. In Wood v. Boone County, 153 Iowa 92, 133 N. W. 377, 39 L. R. A. (N. S.) 168, Ann Cas. 1913D, 1070, where it was said that it would be an anomalous doctrine that would exempt a corporation itself from liability for the doing of a lawful act in a negligent manner, on the ground of its compulsory agency in behalf of the public welfare, and at the same time affix liability upon the agent for precisely the same act, done under express authority, the act complained of was one of nonfeasance, the failure to furnish relief to a pauper. We recognized *arguendo* that, if the agent undertook to furnish relief, he might be personally liable for a negligent performance, although the county would not. We think that these cases and the doctrine there announced have no application to the facts pleaded here. Aside from the distinction between a county and a city, which would perhaps not be controlling where the officer of a city was engaged in the performance of a governmental duty, there is a well recognized distinction between acts of nonfeasance and those of misfeasance, and also, we think, so far as the personal liability of the agent is concerned, between an act of negligence which is committed while the agent or officer is engaged in the performance of an official duty, but which is otherwise unrelated to such duty, and the negligent performance of the duty itself. Could it be said that a member of the board of supervisors, when traveling in performance of his official duty to repair a highway, could escape personal liability for an injury negligently in-

flicted upon one whom he met on the way, because of the official character of his errand, although he would not be liable for a negligent performance of his mission to repair the highway? In Goold v. Saunders, 196 Iowa 380, 194 N. W. 227, we said:

" 'A public official may be guilty of negligence in the performance of official duties for which his official character gives him no immunity.'

"The Supreme Judicial Court of Massachusetts in Moynihan v. Todd, 188 Mass. 301, 74 N. E. 367, 108 Am. St. Rep. 473, in a well considered opinion, in which authorities are extensively reviewed, said that the principle underlying the rule that exempts public officers from liability for negligence in the performance of public duties goes no further than to relieve them from liability for nonfeasance and for the misfeasance of their servants or agents, but that:

" 'For a personal act of misfeasance, we are of opinion that a party should be held liable to one injured by it, as well when in the performance of a public duty as when otherwise engaged.'

"In Skerry v. Rich, 228 Mass. 462, 117 N. E. 824, it was said:

" 'A public officer undoubtedly is liable for personal acts of misfeasance.'

"In Perkins v. Blauth, 163 Cal. 782, 127 Pac. 50, the court, while recognizing that municipal corporations are not liable for dereliction or remissness of municipal officers or agents in the performance of public or governmental functions of the city, said that the agent would be responsible for his tortious acts, although the municipality would not.

"In Florio v. Jersey City, 101 N. J. Law 535, 129 Atl. 470, 40 A. L. R. 1353, it was held that the driver of a municipal fire truck was liable for injuries negligently inflicted by him in the performance of his duty, although the city was not liable. The court said:

" 'We think a sound public policy requires that public officers and employees shall be held accountable for their negligent acts in the performance of their official duties, to those who suffer injury by reason of their misconduct. Public office or employment should not be made a shield to protect careless public officials from the consequences of their misfeasance in the performance of their public duties.'

"In Manwaring v. Geisler, 191 Ky. 532, 230 S. W. 918, 18

A. L. R. 192, where a police officer on a motor cycle struck and injured a child, the court said:

" 'Nor is a peace officer exonerated from liability for an injury inflicted while in the discharge of official duties, on another, on the ground of public necessity, if the officer failed to exercise reasonable care for the protection of those whom he knew or by the exercise of reasonable judgment should have expected to be at the place of the injury, although he may not be criminally liable.' "

In the face of the decision in the Rowley case, and of the review of the authorities in Iowa and other jurisdictions contained in that case, it is difficult to see how the court in the Hibbs case could arrive at the conclusion it did.

An act of misfeasance is a positive wrong, and every employee, whether employed by a private person or a municipal corporation, owes a duty not to injure another by a negligent act of commission. It is the breach of this duty which the law imposes on all men that is involved and this general obligation to injure no man by a negligent act of misfeasance is neither increased nor diminished by the fact that the negligent party is an employee of a municipal corporation.

I would overrule the demurrer of the defendant Kelly.

OPINION ON REHEARING

OCTOBER 25, 1938.

1182

C. J. Lambert and F. M. Beatty, for appellant.

Ralph H. Goeldner, County Attorney, and Robert J. Shaw, for appellees.

KINTZINGER, J.—This case was originally decided in Shirkey v. Keokuk County et al., 275 N. W. 706. A rehearing was granted and the former opinion is hereby withdrawn, except as reaffirmed and modified herein.

The plaintiff Martha Shirkey, appellant, commenced this action against Keokuk County; Ned Wood, J. Forest Embree, and Fred X. Kendall, members of the board of supervisors of said county; and against William Kelly, an employee of the defandant county engaged in the operation of a tractor for and on behalf of said county. Plaintiff alleges in her petiton:

"1. That on December 4, 1935, at more than thirty minutes after sunset on said day, plaintiff was riding in a Ford automobile, owned and driven by her husband, on a county road about a mile and a half northwest of Richland in Keokuk County, Iowa;

"2. That the defendant, William Kelly, was an employee of Keokuk County under the direction and control of the defendant Board of Supervisors, and was operating a county tractor on the east or left side of said highway, traveling in a southerly direction;

"3. That said Kelly negligently, recklessly, carelessly, unlawfully, and in an incompetent manner, drove or operated said tractor at a high rate of speed, without lights as required by law, on the left or wrong side of the road, when the evening was quite dark, and thereby caused the same to crash into the automobile in which plaintiff was riding; and by reason of such careless, reckless, negligent, unlawful, and incompetent operation of said tractor by said William Kelly, a collision was caused whereby plaintiff was crushed, broken, rendered sick, ill, and disabled, as a result of which plaintiff suffered damages in the sum of $26,446.60."

Three demurrers were filed by the defendants; one by defendant Keokuk County, one by the defendant board of supervisors, and one by the defendant William Kelly, the operator of the tractor in question and an employee of the defendant county.

Each of these demurrers was sustained by the lower court and judgment entered against plaintiff for costs. Plaintiff appeals.

I. The facts and the discussion of the law pertaining to the separate demurrers filed by Keokuk County and by the Board of Supervisors of said county are fully set out, considered, and discussed in the opinion in Shirkey v. Keokuk County, 275 N. W. 706. The court sustained these two demurrers, and we are satisfied with the court's ruling in so doing and adhere to and reaffirm our former ruling and opinion thereon. The reasons for this court's ruling thereon are fully set out, considered, and discussed in our former opinion. We are satisfied therewith and deem it unnecessary to give them further consideration except by reference thereto. It is therefore our conclusion that there was no error in the lower court's ruling on the separate demurrers of Keokuk County and its Board of Supervisors.

II. The remaining question is whether or not the lower court erred in sustaining the defendant Kelly's demurrer to plaintiff's petition.

Appellees contend that the defendant Kelly, in performing the services in which he was engaged, was in the performance of a governmental function for Keokuk County and that, inasmuch as the county is not liable for its negligence while in the performance of a governmental function, it necessarily follows that its employee who was engaged by the county in the performance of such service is likewise exempt from liability.

Appellant contends that the action of the defendant Kelly constituted an unlawful act amounting to misfeasance and positive negligence on his part for which he is personally liable regardless of his employment by Keokuk County.

The substituted petition alleges:

"That the said William Kelly unlawfully and in an incompetent manner drove or operated said tractor * * * by driving it at a high rate of speed for such a vehicle, without lights as required by law * * * and on the * * * left, or wrong side of the road, when the evening was quite dark, and thereby causing the same to crash into the automobile in which plaintiff was riding, and by reason of such careless, reckless, negligent, unlawful, and incompetent operation of said tractor * * * by said William Kelly, a collision was caused whereby plaintiff was crushed, broken, rendered sick, ill, and disabled."

The demurrer to this petition admits these facts, and the question for consideration therefore is whether or not the defendant, William Kelly, for his own recklessness, negligence, and unlawful acts can be held liable for the injuries caused by him, notwithstanding his employment by Keokuk County.

Appellees contend that the defendant Keokuk County, in the performance of the work being done by and through its employee, the defendant William Kelly, was engaged in the performance of a governmental function by reason of which neither the defendant county nor its employee, William Kelly, is liable for the acts complained of. Appellees also contend that under the doctrine announced in Hibbs v. Independent School District, 218 Iowa 841, 251 N. W. 606, and other like cases referred to in Shirkey v. Keokuk County et al., Iowa, 275 N. W. 706, there can be no liability on the part of the defendant Kelly, because Kelly was engaged in the performance of a governmental function for Keokuk County.

Since the rendition of the opinion in the Hibbs case, and since the rendition of the original opinion in Shirkey v. Keokuk County et al., Iowa, 275 N. W. 706, this court, in a well considered) opinion in the recent case of Montanick v. McMillin, 225 Iowa 442, 280 N. W. 608, laid down the rule that an employee of a municipality is liable for an act of misfeasance on his part, notwithstanding the fact that he is engaged in the performance of a governmental function. In that case this court said, 225 Iowa 442, 1. c. 458, 280 N. W. 608, 1. c. 616:

"An act of misfeasance is a positive wrong, and every employee, whether employed by a private person or a municipal corporation, owes a duty not to injure another by a negligent act of commission. It is the breach of this duty which the law imposes on all men that is involved, and the general obligation to injure no man by an act of misfeasance is neither increased nor diminished by the fact that the negligent party is an employee of a municipal corporation."

The reason for the rule that an employee of a municipality is liable for his own acts of misfeasance, as distinguished from the acts of nonfeasance by the municipality itself, is well stated in Rowley v. Cedar Rapids, 203 Iowa 1245, 212 N. W. 158, 53 A. L. R. 375. In that case the city's employee was looking after the business of the city, and plaintiff was struck and injured

by an automobile operated under the personal direction of such employee. Both the city and the employee filed demurrers to plaintiff's petition. Both demurrers were sustained. The ruling of the lower court in sustaining the employee's demurrer was reversed. In that case this court said, 203 Iowa 1245, 1. c. 1250, 212 N. W. 158, 160, 53 A. L. R. 375:

"If it should be conceded, as the demurrer assumed, that Kennedy was engaged in the performance of a governmental duty * * *, still we think the demurrer on his behalf was improperly sustained.

"We have held, it is true, that an agent who performs a governmental function on behalf of a county is no more responsible for negligence in so doing than the corporation for which he acts. Snethen v. Harrison County, 172 Iowa 81, 152 N. W. 12; Gibson v. Sioux County, 183 Iowa 1006, 168 N. W. 80. In these cases, negligence was charged on the part of the members of the board of supervisors in respect to permitting various defective conditions to exist in a public highway. In great measure, the acts charged as negligence were acts of nonfeasance, and they all related to alleged negligence in respect to the condition of the highway and the things done or omitted in preparing it for use. In Wood v. Boone County, 153 Iowa 92, 133 N. W. 377, 39 L. R. A. (N. S.) 168, Ann. Cas. 1913D, 1070, where it was said that it would be an anomalous doctrine that would exempt a corporation itself from liability for the doing of a lawful act in a negligent manner, on the ground of its compulsory agency in behalf of the public welfare, and at the same time affix liability upon the agent for precisely the same act, done under express authority, the act complained of was one of nonfeasance,—the failure to furnish relief to a pauper. We recognized arguendo that, if the agent undertook to furnish relief, he might be personally liable for a negligent performance, although the county would not. We think that these cases and the doctrine there announced have no application to the facts pleaded here. Aside from the distinction between a county and a city, which would perhaps not be controlling where the officer of a city was engaged in the performance of a governmental duty, there is a well recognized distinction between acts of nonfeasance and those of misfeasance, and also, we think, so far as the personal liability of the agent is concerned, between an act

of negligence which is committed while the agent or officer is engaged in the performance of an official duty, but which is otherwise unrelated to such duty, and the negligent performance of the duty itself. Could it be said that a member of the board of supervisors, when traveling in performance of his official duty to repair a highway, could escape personal liability for an injury negligently inflicted upon one whom he met on the way, because of the official character of his errand, although he would not be liable for a negligent performance of his mission to repair the highway? In Goold v. Saunders, 196 Iowa 380, 194 N. W. 227, we said:

" 'A public official may be guilty of negligence in the performance of official duties for which his official character gives him no immunity.' "

The precise question before us here was so recently passed upon by us in the case of Montanick v. McMillin, 225 Iowa 442, 280 N. W. 608, that we are impelled to hold that our ruling herein is controlled by our ruling in that. As the reasons for this rule have been so exhaustively discussed and considered in the able opinion therein written by Justice Mitchell, we deem it unnecessary to pursue the discussion further here; but for a further discussion of this question, we make that case a part hereof by reference. We are not inclined to change the rule laid down therein, and adhere thereto.

For these reasons we are constrained to hold that the judgment of the lower court in sustaining the demurrer of defendant Kelly to plaintiff's petition must be and is hereby reversed. As hereinabove indicated, the ruling of the lower court sustaining the demurrers of the defendants, Keokuk County and its Board of Supervisors, is hereby affirmed. The judgment of the lower court is therefore hereby affirmed in part and reversed in part. —Affirmed in part, reversed in part.

SAGER, C. J., and DONEGAN, MITCHELL, STIGER, MILLER, and RICHARDS, JJ., concur.

ANDERSON, J., dissents.

HAMILTON, J., takes no part.