**SPORTIQUE FASHIONS, INC., and Sportique II Fashions, Inc., California Corporations, Plaintiffs,**

v.

**William SULLIVAN et al., Defendants.**

**Civ. No. C–75–1705–GBH.**

United States District Court,
N. D. California.

Aug. 24, 1976.

---

Roger J. Marzulla, San Jose, Cal., for plaintiffs.

Asst. U. S. Atty., William T. McGivern, Jr., U. S. Atty., James L. Browning, Jr., San Francisco, Cal., for defendants.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

GEORGE B. HARRIS, Senior District Judge.

Inscribed on the Main Post Office in New York City is the famous quotation:

> Not snow, nor rain, nor heat, nor gloom of night stays these couriers from the swift completion of their appointed rounds.

The issue before this court is whether a negligence action for damages lies against individual United States Postal Department officials when mail is *not* delivered swiftly, or at all.

### Findings of Fact

1. Plaintiffs were, at the time of filing this suit, separate corporations which have since been merged into a single corporation, Sportique Fashions, Inc. ["Sportique"]. This corporation is owned and operated by Mel Solomon and his wife Maxine.

2. The defendants may be identified as follows by their positions in the Postal Service at the time pertinent here:

William Sullivan—Regional Postmaster General of the Western Region; Lim P. Lee—Sectional Center Manager/Postmaster of the San Francisco Sectional Center, San Francisco District; Lee Stallard—District Manager of the Sacramento District; William H. Lawrence—Sectional Center Manager/Postmaster of the

San Jose Sectional Center, Sacramento District; Wilmer Bennett—Director of Mail Processing in the San Jose Sectional Center; William D. Chronert—Postmaster of the Palo Alto Post Office; Thomas E. Brennan—Assistant Postmaster of the Los Altos Post Office; Manuel Maldonado—Postmaster of the Sunnyvale Post Office; and Dudley Wakefield, Jr.—Superintendent of Mails in the Sunnyvale Post Office.

3. Sportique operates two retail women's clothing stores located respectively in Los Altos and San Jose, California. Each store is run as a "promotional" business, securing the majority of its sales from announcements mailed to customers.

4. Sportique maintains a mailing list which, as of June 25, 1975, contained approximately 25,000 names. All of such names were placed on the list at customers' requests, and the list was kept current by biannual updating.

5. Customers on the mailing list are given advance notice of major sales, which are conducted regularly each year, one week before these sales are announced publicly in the newspapers.

6. These sales have drawn large numbers of customers, and as a result Sportique has maintained a larger than normal inventory for them in expectation of the increased business. When customers on the mailing list do not receive notice of an impending sale, Sportique suffers a diminution of good will based upon their expectation of receiving preferential notice. In addition, Sportique's profit will be less when an insufficient number of customers are reached by the mail notice.

7. Sportique has also maintained a "test mailer" system designed to reach some 350 persons who are advised in advance of a mailing and told to report if they have not received their mailer on time. These test mailer participants are divided in general proportion to the number of customers in each of the major 23 zip code zones which comprise approximately 90% of Sportique's business.

8. Prior to the June 1975 mailing at issue here, Sportique had encountered problems with late delivery or non-delivery of its mailed notices on three previous occasions between 1973 and 1975.

9. On June 25, 1975, California Mailing Service, under a contract with Sportique, delivered to the San Jose Sectional Center Facility at 1750 Meridian Avenue, San Jose, California, approximately 25,100 mailers announcing Sportique's forthcoming July clearance sale. All of these mailers were sorted according to zip code, bundled, placed in postal sacks, labeled and in all other respects complied with postal regulations.

10. Each mailer was stamped with the legend, "Postmaster: Deliver before June 30." Attached to each sack was a yellow "Time Value Mail" tag. Postal regulations provide for the use of "Time Value Mail" tags only for second class mail such as weekly magazines. When appended to sacks of third class mail, as here, they serve merely as a request to expedite.

11. A large number of mailers—perhaps as many as 8,000–10,000—were not delivered by July 1, 1975. Approximately 2,070 of the mailers were not delivered at all.

12. Defendant Bennett testified that the 2,070 undelivered mailers were found at the Cambrian Park facility. Mr. Solomon testified that upon his inquiry on June 30 concerning the status of his mailers, an unidentified female clerk in the bulk mailing room of the San Jose facility informed him that the undelivered mailers were there, misplaced beneath other mail matter. In view of the pattern of late deliveries, it appears more probable that the undelivered mailers were misplaced at the San Jose facility.

13. Defendants Lawrence and Bennett first learned of these undelivered mailers on July 7. Defendant Lawrence thereupon authorized a refund of postage to Mr. Solomon.

14. The San Jose Sectional Center facility processes approximately three million pieces of mail each day, of which 600,000 to 800,000 are circulars.

15. Sportique contends that the postal employees named in its complaint, or some of them, were negligent with respect to the late delivery and/or non-delivery of mailers, as noted above. At trial, Sportique offered proof through Mr. Solomon and certain documentary evidence that Sportique lost approximately $20,000–$25,000 because of the late and/or undelivered mailers.

### Conclusions of Law

1. By law, no claim arises against the United States because of the loss, miscarriage or negligent transmission of letters or postal matter. 28 U.S.C. § 2680(b).

Similarly, Congress has not waived sovereign immunity with respect to the Post Office Department, and therefore the latter is not a suable entity. *Miller v. Reddin*, 293 F.Supp. 216, 233 (C.D.Cal.1968), *remanded on other grounds*, 422 F.2d 1264 (9th Cir. 1970).

Sportique has attempted to circumvent these obstacles by naming individual postal officials rather than the Postal Service, but each of the defendants was acting in his official capacity and none was directly involved with the activity which led to the injury complained of here.

2. In determining whether the instant action is in fact an unconsented suit against the sovereign, this court is not bound by the naming of individual defendants nor by the plaintiffs' characterization of the suit. Rather, the cases teach that the court must look behind the pleadings to ascertain whether the action is in fact against the United States or the Postal Service. *See Manhattan-Bronx Postal Union v. Gronouski*, 121 U.S.App.D.C. 321, 350 F.2d 451, 454 (1965), *cert. den.*, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966); *Baca v. Butz*, 394 F.Supp. 888, 893 (D.N.M.1975); *Bower v. United States*, 347 F.Supp. 1252, 1255 (W.D.Pa.1972); *Mine Safety Appliances Co. v. Knox*, 59 F.Supp. 733, 737 (D.D. C.1945), *affirmed*, 326 U.S. 371, 66 S.Ct. 219, 90 L.Ed. 140 (1945).

Under the rule set forth in *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), a suit will be deemed to be against the sovereign if the judgment would expend itself on the public treasury or interfere with the public administration. The instant suit has just that effect. Although the Court in *Dugan* recognized an exception for actions by officers beyond their statutory powers, there has been no showing that any of the defendants named herein took, or forebore from taking, any action beyond the scope of his powers.

3. The defendants herein are each entitled to the defense of immunity under the theory of qualified immunity. Defendants have cited the case of *Barr v. Mateo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), for the proposition that conduct by a Government officer within the outer perimeter of his line of duty is sufficient to invoke the privilege against suit, and that even a claim of unworthy purpose would not defeat that privilege. *Id.* at 575, 79 S.Ct. 1335. It is not the officer's title but his duties which determine whether he may invoke the privilege. *Id.* at 573–574, 79 S.Ct. 1335. The test is whether the officer's duties are discretionary or ministerial in nature. *Id.* at 573–575, 79 S.Ct. 1335. *David v. Cohen*, 132 U.S.App.D.C. 333, 407 F.2d 1268, 1271–1272 (1969).

The instant case raises the question whether the defendants are entitled to the absolute immunity of *Barr*, *see Skolnick v. Campbell*, 398 F.2d 23, 27 (7th Cir. 1968), or the lesser privilege of qualified immunity pursuant to *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) and its progeny. *Scheuer* involved a § 1983 action against state officials. In rejecting the defense of absolute immunity, the Supreme Court accorded the defendants only a qualified immunity:

> It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct. *Id.* at 247–248, 94 S.Ct. at 1692.

Although there is authority that *Scheuer* did not overrule *Barr*, *e. g., Chaudoin v. Atkinson*, 406 F.Supp. 32, 34 (D.Dela.1975), it now appears to be the law that claims of violations of constitutional or civil rights fall under the "good faith" test of *Scheuer*, while *Barr* applies to no more than actions for common-law torts. *See Fialkowski v. Shapp*, 405 F.Supp. 946, 954 (E.D.Pa.1975); *Shipp v. Waller*, 391 F.Supp. 283, 285–286 (D.D.C.1975).

The rule in the Ninth Circuit is not entirely clear. In *Mark v. Groff*, 521 F.2d 1376 (9th Cir. 1975), a case brought by a tax accountant against I.R.S. agents alleged to have intentionally ruined his business and caused him emotional distress, the Ninth Circuit reversed the district court's dismissal on the ground of absolute immunity. On the one hand, the court found that *Scheuer* had destroyed the notion of absolute immunity for executive officials. *Id.* at 1379. On the other hand, it was clear that the plaintiff in *Mark* was grounding his recovery squarely on claimed violations of constitutional rights. In declining the defendants' distinction between actions against state and those against federal officials, the court reiterated the fact that the suit before it sought to redress the deprivation of constitutional rights, but it did not address itself to damage claims based on the commission of ordinary torts.

■ Assuming *Mark v. Groff* to be applicable to the instant case, it is nevertheless certain that the defendants are entitled to the defense of immunity even under the qualified immunity approach.

Each defendant herein was clearly acting within the scope of his duties at all times, and there has been no showing that any defendant acted other than reasonably and in good faith. Each defendant has established that his position involved discretionary and supervisory functions; none had any responsibility for physically accepting, processing or delivering the mail in question here.

Accordingly, each defendant herein is entitled to the defense of immunity.

■ 4. No defendant herein may be held liable under a theory of vicarious liability for the acts of subordinates or other employees in the Postal Service. *See Black v. United States*, 534 F.2d 524, 528 (2d Cir. 1976); *Lander v. Morton*, 171 U.S.App.D.C. 146, 518 F.2d 1084, 1087 (1975); *Green v. Laird*, 357 F.Supp. 227, 230 (N.D.Ill., 1973).

No defendant here had any personal involvement, either directly or indirectly, with the conduct of which Sportique complains. Thus Lim P. Lee is sued, but the evidence established that at no time did any of the mail in question pass through the San Francisco facility of which he is the Postmaster, nor did he have any authority whatsoever over any of the individuals who would have handled the mail. Similarly, defendants Stallard, Chronert, Brennan, Maldonado and Wakefield were not in any manner responsible for the late delivery or non-delivery of mail. Defendant Sullivan, as Regional Postmaster, was not involved in such day-to-day local operations either.

Recognizing this, plaintiffs have now sought to narrow the focus to defendants Lawrence and Bennett, each affiliated with the San Jose facility where the undelivered mailers were found. As found above, however, neither of these defendants had anything to do with the daily receipt, processing or delivery of mail, nor did their jobs include such functions. Plaintiffs argue that defendants Lawrence and Bennett were lax in their follow-up investigation of the incident, but that is irrelevant to plaintiff's damage claim, since by then the sale was finished and plaintiff's claimed damages had already accrued.

Nor can plaintiffs succeed by holding the defendants for negligent supervision of their employees, for nothing in the record supports a conclusion that such was the case.

5. As a last resort, plaintiffs seek to rely on the California doctrine of *res ipsa loquitur* in order to establish liability.

The current status of *res ipsa loquitur* was summarized in *Newing v. Cheatham*, 15 Cal.3d 351, 359, 124 Cal.Rptr. 193, 199, 540 P.2d 33, 38 (1975):

It is settled law in this state that the 'doctrine of res ipsa loquitur is applicable where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the one responsible.' [Citation omitted.] According to the classic and oft-repeated statement, there are three conditions for the application of the doctrine: '(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. [Citations omitted.] * * *'

The second element, that of exclusive control by the defendant, has been subject to a flexible interpretation by California courts, *see e. g., Bedford v. Re,* 9 Cal.3d 593, 597, 108 Cal.Rptr. 364, 510 P.2d 724 (1973); Prosser, Law of Torts § 39 at 220 (4th ed. 1971); Witkin, California Evidence § 281 at 241 (2d ed. 1966), yet it is here that plaintiffs founder. The "agency or instrumentality" claimed to have caused the problems with mail delivery here is, of course, individual employees of the Postal Service. Were this a suit against the Postal Service, plaintiffs could contend that the latter, as defendant, was in control of such agency.

But the Postal Service is not and cannot be a defendant herein, and the individual postal employees who may have acted negligently were agents of the Postal Service and not of any defendant sued here individually. The individuals named as defendants were not in control of the mail processing facilities within the contemplation of the cases on *res ipsa loquitur.* Indeed, to the extent that the doctrine is one of probabilities and reasonableness, it is certain that *none* of these defendants was in any manner directly responsible for the late delivery or non-delivery of plaintiffs' mailers.

Where it is shown that it is at least as likely that the negligence complained of was caused by a third party or parties, the plaintiff may not avail himself of *res ipsa loquitur* to aid his proof. *See Stanford v. Richmond Chase Co.,* 43 Cal.2d 287, 294–295, 272 P.2d 764 (1954); *Poulsen v. Charlton,* 224 Cal.App.2d 262, 268, 36 Cal.Rptr. 347 (1964); *Pappas v. Carson,* 50 Cal.App.3d 261, 268, 123 Cal.Rptr. 343 (1975); Restatement of Torts, Second, § 328D(b).

6. Plaintiffs' counsel has ably and creatively argued in support of recovery, but it is clear that this court cannot countenance by indirection what the law says may not be done directly. Any remedy for the kind of loss suffered in this case lies within the province of Congress, yet Congress has made it manifest that no such remedy shall be afforded.

Every day millions of pieces of mail are processed by postal employees, and concededly a small percentage of these are delivered late or not at all. Yet it is hardly accidental that despite the numerous instances of potential suits for damages, there is not a single reported decision in which damages have been awarded against postal employees under circumstances such as those in the instant case. To permit such suits against individual postal employees acting within the scope of their duties would be to subject them to potential liability far beyond either their rewards or their capacity to control the sources of damage. Were this the case, few persons would work for the Postal Service.

Accordingly, the court concludes that judgment shall be for defendants. The complaint and action are hereby dismissed. Defendants are directed to submit a form of judgment consistent with the foregoing.

It is so ordered.