Jess OYLER and Susan Oyler,
Appellants (Plaintiffs),

v.

The STATE of Wyoming and Anthony
Malovich, Appellees (Defendants).

No. 5296.

Supreme Court of Wyoming.

Oct. 29, 1980.

John B. Rogers, Cheyenne, for appellants.

John D. Troughton, Atty. Gen., Bruce A. Salzburg, Senior Asst. Atty. Gen., and Lawrence J. Wolfe, Law Clerk, Office of the Atty. Gen., Cheyenne, for appellees.

Before RAPER, C. J., McCLINTOCK, THOMAS, and ROSE, JJ., and BENTLEY, D. J.

ROSE, Justice.

This appeal—resolved in the district court by judgment granting appellees' motion to dismiss as to both defendants, the State of Wyoming and Anthony Malovich—concerns a claim for damages allegedly suffered as a result of an offer of employment which never ripened. It poses the question of whether or not—given the posture of this case—the State of Wyoming and Mr. Malovich,[1] who made the job offer, enjoy immunity as a matter of law.

---

1. The following sections from Wyoming Statutes 1977 are relevant to the qualifications and duties of the Director of the Wyoming Division of Criminal Investigation, the position held by Mr. Malovich at all times relevant hereto:

"§ 9-2-531. *Director; appointment.*

"The attorney general, with the approval of the governor, shall appoint a director of the division of criminal investigation.

"§ 9-2-532. *Same; qualifications.*

"The director shall be a professional law enforcement officer, experienced in modern methods for the detection of crime and the apprehension of criminals. He shall possess the qualifications of an agent, as defined under section 9–2–536 of the statutes, and shall have a thorough working knowledge of criminal law and the law of criminal procedure, including the law of arrest, search and seizure and interrogation of criminal suspects.

Plaintiffs filed a negligence action against the State and state official, Anthony Malovich, Director of the Wyoming Division of Criminal Investigation,[2] in the latter's individual capacity. The district court, on the ground of sovereign immunity, dismissed the complaint against both defendants. We will affirm the dismissal of the suit against the State,[3] but reverse the dismissal against the employee, Malovich, and remand that aspect of the case for further proceedings.

According to the plaintiffs–appellants' statement of the facts–which the defendants–appellees adopt–Jess and Susan Oyler both left jobs in Rawlins and moved to Cheyenne in reliance upon a job offer extended to Mr. Oyler by Mr. Malovich. Upon reporting to work, Mr. Oyler was first told that red tape was delaying the start of his employment. After Oyler had been waiting in Cheyenne for several days to begin his job, Malovich denied that he had ever offered employment to Oyler. Both of the Oylers managed to find work in Cheyenne, but at lower salaries than their jobs in Rawlins (and, in Mr. Oyler's case, lower than the salary promised for the State job). They sued to recover their financial loss resulting from the move made in reliance upon the Malovich job offer.

In addition, the director shall possess other qualifications as may be specified by the attorney general.
"§ 9–2–533. *Same; duties generally.*
"The director shall be chief administrative officer and chief agent of the division. He shall supervise and direct the administration of all activities of the division. The director shall, subject to the written approval of the attorney general, prescribe rules and regulations not inconsistent with law for the operation of the division and the conduct of its personnel and the distribution and performance of their duties. The director shall be responsible to the attorney general and shall keep him informed of the activities of the division.
"§ 9–2–538. *Agents; powers; authority.*
"Each agent of the division shall be vested with the powers of peace officers in the state of Wyoming and shall have all the powers and authority of any sheriff, police officer, highway patrolman or other law enforcement officer in this state."

*Disposition*

The trial court dismissed the amended complaint on the ground that it did not state a claim upon which relief could be granted since both parties enjoyed sovereign immunity.

## DISMISSAL AS TO DEFENDANT– STATE OF WYOMING

Appellants correctly urge that the State has, through legislative enactment, waived its sovereign immunity "to the extent of the limits of liability insurance carried by the governmental entity," according to the provisions of § 1–39–118(b), W.S.1977, 1980 Cum.Supp., which is substantially the same as the section it replaced.[4] Appellants further argue that the State's liability insurance, in force during the incident complained of here, covered their claim and thus, to the extent of that coverage, sovereign immunity is not available as a defense to this action.[5]

■ We cannot agree that the injury complained of is covered by insurance. The policy provides coverage for

"all sums which the Insured shall become legally obligated to pay as damages because of negligent acts, errors, or omissions of the paid employees of the law enforcement agency named in the declaration as follows:

2. The terms "employee," "official," "officer," and other similar terms take on special significance to this area of the law. We use "employee" in its generic sense unless otherwise indicated.

3. See *Worthington v. State*, Wyo., 598 P.2d 796 (1979).

4. Section 1–35-102, W.S.1977, provides:
 "The defense of governmental immunity is waived to the extent of the limits of liability insurance carried by the governmental entity. This section applies to any governmental body or agency in the state securing liability insurance coverage."

5. After the events pertinent to this appeal transpired, the State Legislature enacted the Wyoming Governmental Claims Act, § 1–39–101 et seq., W.S.1977, 1980 Cum.Supp., which may be construed as a further but incomplete waiver of sovereign immunity.

"Coverage A—Personal Injury

"Coverage B—Bodily Injury

"Coverage C—Property Damage"

However, the policy defines "Personal Injury" as follows:

" 'Personal Injury' means false arrest, erroneous service of civil papers, false imprisonment, malicious prosecution, assault and battery, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States of America, or Canada, for which law enforcement officers may be held liable. . . . "

The plaintiffs' "injury" does not, in our opinion, fall within this definition, and we are not presented with authority which would indicate that it does. Furthermore, the plaintiffs' alleged "injury" does not lie within the policy's definition of "property damage."

Appellants argue that there are material factual and legal questions relating to the insurance policy which were not and could not be appropriately resolved by a motion to dismiss, and, in this connection, the transcript of the hearing on the motion discloses that the State did not produce the policy until the day of the hearing on the motion. Even so, the policy was considered and the court must have found that it does not cover the alleged injury, in view of the fact that the Order Granting Motion to Dismiss recites that the complaint did not state a claim upon which relief could be granted since both defendants enjoyed sovereign immunity.

**6.** Appellees rely on *Biscar v. University of Wyoming Board of Trustees*, Wyo., 605 P.2d 374, 375 (1980), but that opinion is not helpful to the question of whether Malovich is personally liable to the plaintiffs because the Board members in *Biscar* were sued in their *official* capacity—not as individuals.

**7.** See the historical discussion in *Jivelekas v. City of Worland*, Wyo., 546 P.2d 419 (1976).

**8.** Article 1, Section 8, of the Wyoming Constitution, provides:

WITH RESPECT TO THE IMMUNITY OF MALOVICH [6]

*Abrogation of Governmental Immunity*

Introductorily, we acknowledge that in Wyoming the state of the law of governmental immunity in related areas at all times relevant hereto was as follows:

■ Immunity is removed as a defense to tort actions at all levels of government below the State itself. *Oroz v. Board of County Commissioners of Carbon County*, Wyo., 575 P.2d 1155, 1158 (1978). In so holding, we determined that the genesis of the doctrine of governmental immunity is in *Russell v. The Men of Devon*, 2 Term. Rep. 667, 100 Eng.Rep. 359 (1788), an old English case which is almost universally credited with being the mother of the concept. We reasoned that if immunity could be court—created, it could be court—abrogated.[7]

*State Immunity Retained*

We have retained immunity from tort actions for the State in any amount not covered by insurance unless the State's permission to sue has been granted. This was done on the theory that state immunity is a creature of the constitution and cannot be court—abrogated.[8] *Worthington . v. State*, Wyo., 598 P.2d 796 (1979).

*State Employee Liability* [9]

This leaves us with a misty and hazy area yet to be clarified and defined—namely, what to do with the question which asks whether or not, and under what circumstances, the State's employees are or are not immune from tort liability. We paid

"*Courts open to all; suits against state.*—All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay. Suits may be brought against the state in such manner and in such courts as the legislature may by law direct."

**9.** The Wyoming Governmental Claims Act, § 1–39–101 et seq., W.S.1977, 1980 Cum.Supp., enacted in 1979 (S.L. of Wyo. 1979, ch. 157, § 1), was, therefore, *not* the law of Wyoming at any time relevant to the facts of this case.

glancing recognition to this fuzzy area of law when, in *Retail Clerks Local 187 v. University of Wyoming*, Wyo., 531 P.2d 884 (1975) (having held that suit against the state university administrative officials and board members in their *official* capacity was a suit against the State), we said that the immunity question in a suit against these board and administrative officials *individually* was not so clear. We quoted the United States Supreme Court, where the Court said:

> " 'As to what is deemed a suit against a state, the early suggestion that the inhibition might be confined to those in which the state was a party to the record [citations] has long since been abandoned, and it is now established that the question is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record [citations].' *In re State of New York*, 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057."

We also cited *Anderson v. Argraves*, 146 Conn. 316, 150 A.2d 295, 297; and *Stucker v. Muscatine*, 249 Iowa 485, 87 N.W.2d 452, 456.

We then quoted the following from *Schwing v. Miles*, 367 Ill. 436, 11 N.E.2d 944, 947 (1937), 113 A.L.R. 1504:

> " ' * * * While a suit against state officials, and, in particular, the Director of the Department of Public Works and Buildings, is not necessarily a suit against the state, the constitutional inhibition cannot be evaded by making an action nominally one against the servants or agents of the state when the real claim is against the state itself, and it is the party vitally interested. * * * ' " 531 P.2d at 887.

At common law, the principal and agent are both liable for their tortious acts—the agent because he or she is the wrongdoer—the principal because of wrongdoing or by dint of the doctrine of respondeat superior. In the realm of state torts, respondeat supe-

rior is not the exception to immunity but, rather, is inherently rejected by it.[10] Even so, in certain instances, such as some of those hereinafter discussed or where immunity has been abrogated (as in Wyoming with governmental entities other than the State itself, *Oroz*, supra), the public employee may be liable for wrongdoing.

### Bad Faith, Intentional Torts, False Imprisonment and the Civil Rights Act

 At the outset, any classification of those deeds which are not immune from public employees' tort liability must first recognize acts done in bad faith, intentional torts, false imprisonment and violation of rights under the Civil Rights Act, 42 U.S.C.A. § 1983. *Minge*, supra, fn. 10, at pages 247–248, puts it this way:

> " . . . There is also probably no immunity for acts done in bad faith, intentional torts or false imprisonment. [Davis, *Administrative Law* §§ 26.03, 26.04 (Supp. 1970). See also Handler & Klein, *The Defense of Privilege in Defamation Suits Against Government Executive Officials*, 74 Harv.L.Rev. 44 (1960); Van Alstyne, *A Study Relating to Sovereign Immunity* 406–11 (Calif. Law Revision Comm'n 1963) (false imprisonment); *Restatement (Second) of Torts* §§ 35, 41 (1965) (false imprisonment).] Although no Wyoming cases have discussed liability in these last three areas, in one case a sheriff's surety was held liable for a 22 hour, illegal search of the plaintiff's premises. [*Lynch v. Burgess*, 40 Wyo. 30, 273 P. 691 (1929).] Presumably the surety was only liable if the sheriff was liable and it would appear that the sheriff was guilty of false imprisonment. In another case the court said that a deputy–sheriff who effects an irregular and illegal abduction does so in his role as a private individual. [*Kingen v. Kelley*, 3 Wyo. 566, 28 P. 36 (1891).] Presumably, acting as a private individual he would be liable. [Cf. *Ellis v. Wyoming Game & Fish Comm'n*, 74 Wyo. 226, 286 P.2d 597 (1955).] Finally, it should be

---

**10.** Governmental Immunity from Damage Actions in Wyoming, Minge, Wyoming Land and

Water Law Review, Vol. VII, No. 1, 1972, 229, at p. 242.

noted that under the Federal civil rights statutes any state or local officer or employee, other than a judge or a legislator, who is responsible for depriving a person of a right, privilege or immunity secured by the Constitution and laws of the United States may be liable to that person in an action for damages. [42 U.S.C. § 1983 (1970). See also 42 U.S.C §§ 1985, 1986 (1970) ... *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) ... *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) and *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ...] Litigation arising out of the notorious incident at the University of Wyoming involving the dismissal of fourteen Blacks from the football squad was based, in part, upon this Federal cause of action. [*Williams v. Eaton*, 443 F.2d 422 (10th Cir. 1971)]...." (Bracketed matter from author's footnotes.)

The Civil Rights Act, 42 U.S.C.A. § 1983, provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Other provisions of the Act created civil liability for denial of equal protection (42 U.S.C.A. § 1985) and created criminal liability for designated willful action (42 U.S. C.A. §§ 1987–1995).

There is, of course, no allegation of the violation of the plaintiffs' civil rights present in their complaint in this case, but we take note of the civil–rights provision as one of many examples of areas where im-

munity is not available as a defense to an action where public employees are charged with tortious conduct.[11]

## Employees Acting in the Absence of or in Excess of Their Authority

■ One of the areas in which courts find the identity of the state and public officials divisible is where state officers have acted without or in excess of their authority and, therefore, their acts are not regarded as being those of the state for immunity purposes. Where a public officer acts in the absence of or in excess of his authority, he may be held personally liable for his wrongdoing. In such circumstances, he is viewed by courts to be acting individually and not in his official capacity. The general rule is stated in 63 Am.Jur.2d, Public Officers and Employees, § 291, Acts in excess of authority, pp. 801–802, as follows:

"The immunity of the sovereign from suit does not protect public officers from personal liability for their wrongful acts *in excess of their official authority*, and an officer–executive, administrative, quasi–judicial, ministerial, or otherwise–who acts *outside the scope of his jurisdiction and without authorization of law* may thereby render himself amenable to personal liability in a civil suit. *If he exceeds the power conferred on him by law*, he cannot shelter himself by the plea that he is a public agent acting under color of his office, or that the damage was caused by an act done or omitted under color of office, and not personally. In the eye of the law, his acts then are wholly without authority. In this connection a careful distinction must be drawn between erroneous acts in the exercise of jurisdiction or authority and acts in excess of jurisdiction...." (Footnote references omitted and emphasis supplied.)

---

11. In *Board of Trustees, etc. v. Holso*, Wyo., 584 P.2d 1009 (1978), we considered the question of an individual's alleged injuries by public officials and employees under the Civil Rights Act. Also, see *Smith v. Losee*, 10 Cir., 485 F.2d 334 (1973), cert. den. 417 U.S. 908, 94 S.Ct.

2604, 41 L.Ed.2d 212 (1973), as well as the article entitled "CIVIL RIGHTS–Limitations of the Immunity Defense for Public Officials in Damage Actions Brought under 42 U.S.C. § 1983 (1971)," in Vol. IX, No. 1, Wyoming Land and Water law Review, p. 263 (1974).

In *Schwing,* supra, which we quoted in *Retail Clerks Local 187,* supra, the court stated the exception to the general rule of state officers' non–liability where the opinion says:

"... On the other hand, where the action at law or suit in equity is maintained against a state officer or the director of a department on the ground that, while claiming to act for the state, he violates or invades the personal and property rights of the plaintiff under an unconstitutional act, or *under an assumption of authority which he does not have,* such suit is not against the state. *Noorman v. Department of Public Works and Buildings,* 366 Ill. 216, 8 N.E.2d 637, supra; *Fitts v. McGhee,* 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535; *United States v. Lee,* 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171; *White Eagle Oil & Refining Co. v. Gunderson,* 48 S.D. 608, 205 N.W. 614, 43 A.L.R. 397. The presumption obtains that the state, or a department thereof, will not, and does not, violate the Constitution and laws of the state, but that such violation, if it occurs, is by a state officer or the head of a department of the state, and such officer or head may be restrained by proper action instituted by a citizen. *Tindal v. Wesley,* 167 U.S. 204, 17 S.Ct. 770, 42 L.Ed. 137; *Noorman v. Department of Public Works and Buildings,* supra; *Joos v. Illinois National Guard,* 257 Ill. 138, 100 N.E. 505, 43 L.R.A., N.S., 1214, Ann.Cas.1914A, 862...." 367 Ill. 436, 11 N.E.2d at 947. (Emphasis supplied.)

*Nature of the Office: Discretionary and Ministerial Powers and Duties*

██ Where negligence is charged, the immunity of a public officer or employee may depend upon the nature of the duties performed, that is, whether the act is discretionary or ministerial. *Sportique Fashions, Inc. v. Sullivan,* D.C.Cal., 421 F.Supp. 302 (1976); *Simon v. Heald,* Del.Super., 359 A.2d 666 (1976); *Walkowski v. Macomb County Sheriff,* 64 Mich.App. 460, 236 N.W.2d 516 (1975); *Johnson v. State,* 69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352 (1968); *Carter v. Carlson,* 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), on remand 56 F.R.D. 9 (1972), rev'd in part on other grounds, sub nom., *District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), reh. den. 410 U.S. 959, 93 S.Ct. 1411, 35 L.Ed.2d 694 (1973), vacated in part on other grounds 160 D.C.D.C. 148, 489 F.2d 1272 (1974); *Wu v. Keeney,* D.C. D.C., 384 F.Supp. 1161 (1974); *Watson v. St. Annes Hospital,* 68 Ill.App.3d 1048, 25 Ill. Dec. 411, 386 N.E.2d 885 (1979); and *Cerino v. Township of Palmer,* Pa.Super., 401 A.2d 770 (1979). Immunity generally extends to discretionary acts of officials but not to those that are ministerial.

██ In ascertaining whether an act is discretionary, the judicial (decision– or policy–making) character of the officer's act rather than the judicial (decision– or policy–making) character of his office furnishes the basis of his exemption if, in fact, he is exempt.[12]

 A public official's duty is ministerial when

the resolution of the substantive question of negligence. [*Johnson v. State,* 73 Cal.Rptr. 240, 447 P.2d 352, 69 Cal.2d 782]." (Bracketed matter from text footnotes.)

As is said in the *Minge* article, supra, at p. 246:

"... If an act is discretionary it gives rise to immunity; otherwise there is liability."

Davis, Administrative Law Treatise § 25.08 (1970 Supp.), identifies a discretionary function as one which requires the conscious balancing of risks and advantages or the making of policy–type decisions.

---

**12.** In 67 C.J.S. Officer § 208, p. 685, it is said:

"The classification of the act of a public employee as 'discretionary' will not produce immunity if the injury to another results, not from the employee's exercise of discretion vested in him to undertake the act, but from his negligence in performing it after having made the discretionary decision to do so. [*McCorkle v. City of Los Angeles,* 74 Cal. Rptr. 389, 449 P.2d 453, 70 Cal.2d 252] The existence of alternatives facing an employee does not perforce render the employee immune from tort liability even though those alternatives might well play a major part in

"... it is absolute, certain, and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion. More specifically, where the law imposes on the officer the performance of ministerial duties in which a private individual has a special, direct, and distinctive interest, the officer is liable to such individual for any injury which he may proximately sustain in consequence of the failure to perform the duty at all, or to perform it properly." (Footnote references omitted.) 67 C.J.S. Officers § 208, subsection c, "Ministerial Powers and Duties, p. 686.

See, also, quotations from *Denver Buick, Inc. v. Pearson*, Wyo., 465 P.2d 512 (1970); and *Spaniol Ford, Inc. v. Froggatt*, Wyo., 478 P.2d 598 (1970), infra.

The United States Court of Appeals confronted the ministerial–discretionary issue in *Jackson v. Kelly*, 10 Cir., 557 F.2d 735 (1977), and held that an Air Force physician's operation technique could be ministerial in nature and, thus, not immune. In that case, Chief Judge Lewis, writing for the court, said that the physician's treatment of the patient did not involve governmental discretion and that the physician was not entitled to assert the doctrine of official immunity. The court said that the test for immunity is not mechanical and immunity is not the same for all officials for all purposes. While recognizing the needs of both plaintiff and the public's right to have public officials free of harassment from litigation, the court went on to explain that the determination of whether given fact situations constitute immunity for the particular official involved required careful inquiry into the alleged wrongful acts and scope of the accused official's duties.

In its decision, the court overruled any prior decisions granting absolute immunity to defendants who could not pass the discretionary–functions test. Referring to the recent United States Supreme Court case of *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 2028, 36 L.Ed.2d 912 (1973), Judge Lewis observed that the Court said in *Doe*, where the immunity of the public printer and the superintendent of documents for Congress was at issue:

"... Plaintiffs alleged these officials invaded their privacy by publishing certain derogatory documents for use in Congress and distribution elsewhere. The Court found the officials were acting within the scope of their duties but their duties were not discretionary

The court held official immunity does not automatically attach to any conduct expressly or impliedly authorized by law, unless the official was exercising a discretionary function. This rule is appropriate because the effective administration of policies of government is not severely impaired if officials with ministerial duties are answerable in damages for failure to perform obligatory functions with reasonable care.

"*Doe* further indicates that when an official acting in a nondiscretionary capacity claims immunity, the Supreme Court

'has advised a discerning inquiry into whether the contributions of immunity to effective government ·in particular contexts outweigh the perhaps recurring harm to individual citizens ....'

412 U.S. at 320, 93 S.Ct. at 2028. Thus, the court mandates the use of the discretionary function test, and a direct balancing of the policies underlying the immunity doctrine in the context of each fact situation. See, e. g., *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (qualified immunity granted to school board officials who exercise discretion); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (qualified immunity for Governor and executive officers of state exercising discretionary responsibilities)." 557 F.2d at 737.

It can, therefore be said that–absent civil–rights complaints, acts done in bad faith, intentional torts or false imprisonment– where the employee is performing discre-

tionary acts which are not in excess of authority and are within the scope thereof, he or she will not be liable for the manner in which discretion is exercised. Immunity flows from the notion that, in order that government may function effectively and efficiently, officers' decision—making responsibilities should remain free from threat of suit for redress of tortious activity. Again, assuming an absence of civil—rights complaints, acts done in bad faith, intentional tort or false imprisonment, where the employee is functioning within the scope of his authority and not in excess thereof, and where he negligently performs or negligently fails to perform ministerial acts imposed by law or legal authority, he or she will not be immune.

A sense of the protection which the law affords the discretionary functions of public officials, and particularly the judiciary, can be gleaned from 3 Davis, Administrative Law Treatise, ch. 26, § 26.01, where the author says:

"The background for the law conferring immunity upon administrative officers exercising discretionary powers is the law concerning immunity of judges. The Supreme Court early held: 'It is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.... The principle ... obtains in all countries where there is any well—ordered system of jurisprudence.' The doctrine is rigorously applied in recent times, with the explanation that 'The purpose of the rule which exempts public officers from the harassment of private suits for damages on account of the performance of their public duties is, secondarily, for their protection, in order that its primary objectives may be secured, i. e., a fearless administration of the law.' ..." (Footnote reference omitted.)

We were confronted with the issue of a state judicial official who was alleged to have acted in excess of his authority in *Linde v. Bentley*, Wyo., 482 P.2d 121 (1971). In that case, when a non—lawyer purported to represent himself and others before the courts of this state, a district judge was sued for issuing an order instructing the clerk of the court to strike all the layman's pleadings from the record and to not accept for filing further pleadings and motions until they had been reviewed by the judge.

Finding that the trial judge did not act outside his jurisdiction because of a statute extending the judge's supervisory authority over clerks of court, and even though the plaintiff had not urged that the judge did not have jurisdiction over the subject matter (and despite the warm protective blanket of immunity in which the law has safely wrapped the judiciary), we were, nevertheless, moved to observe:

"As to plaintiff's third point, it has long been the rule that courts of general jurisdiction are exempt from liability of civil actions for their official acts even if in excess of their jurisdiction—although a distinction is observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject matter. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351–352, 20 L.Ed. 646; *Randall v. Brigham*, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285; 46 Am.Jur.2d Judges § 72 ...." 482 P.2d at 123.

We know of no Wyoming case authority which discusses the question of governmental immunity where the officer acts under an "assumption of authority which he does not have," *Schwing*, supra, i. e., where he purports to act in the absence of jurisdiction over the subject matter.

We look, then, to other areas for a sense of the balancing process in which courts must indulge where they are charged with finding immunity for the administrative official so that he may engage in "fearless administration of the law," Davis, Administrative Law, supra, while, at the same time, providing protection from those officers who, under the guise of immunity, work their wrongful ways against those who deserve neither their wrath nor their negligence.

In *Price v. State Highway Commission*, 62 Wyo. 385, 167 P.2d 309, 312 (1946), where the plaintiff struck a snowplow and sued the Commission, the State Highway Superintendent and the driver of the plow for negligent operation of the vehicle, we decided that, since the individuals were operating within the scope of their employment and authority, they partook of the State's immunity. In support of our holding, we cited 43 Am.Jur. 85, § 273 from the 1942 encyclopedia [now 63 Am.Jur.2d, Public Officers & Employees, § 288], where it is said:

"'As a rule a public officer, whether judicial, quasi–judicial, or executive, is not personally liable to one injured in consequence of an act performed within the scope of his official authority, and in the line of his official duty. In order that acts may be done within the scope of official authority, it is not necessary that they be prescribed by statute, or even that they be specifically directed or requested by a superior officer, but it is sufficient if they are done by an officer in relation to matters committed by law to his control or supervision, or that they have more or less connection with such matters, or that they are governed by a lawful requirement of the department under whose authority the officer is acting.'"

This rule does not take into account the difference between decision–making and ministerial functions, which difference is basic to a public employee's liability inquiry. While we did not discuss the ministerial v. discretionary feature in *Price*, supra, we did compare ministerial with "governmental" function in *Osborn v. Lawson*, Wyo., 374 P.2d 201, 203 (1962), where we said:

"The operation of snowplows along the highways of this state is practically a necessity. It is a duty performed on be-half of the public, and so we think that we must hold that the operation of a snowplow in the case at bar was a governmental duty rather than ministerial. *Mower v. Williams*, 402 Ill. 486, 84 N.E.2d 435; *Shirkey v. Keokuk County*, 225 Iowa 1159, 275 N.W. 706; *Genkinger v. Jefferson County*, 250 Iowa 118, 93 N.W.2d 130; 5 Blashfield, Cyclopedia of Automobile Law and Practice, § 2889, p. 28 (Perm. Ed.)."

This is an unfortunate comparison. The proper backdrop against which a public official's liability must be set is ministerial v. discretionary—not ministerial v. governmental!! Surely, it is obvious that an official's act may be *ministerial and governmental*, but it cannot be *ministerial and discretionary*.[13]

Although it is admittedly difficult to know, *Price*, supra, may find its rationale in the concept which says that where the public employee is performing a function within the ambit of his authority and the risk of injury to the public is inherent in the activity, the employee ought not be required to bear the risk[14] and, therefore, his or her negligence–if any–will be regarded as decisional in nature and hence immune. Furthermore, the *Price* snowplow operator may be regarded as acting under orders from his superior who was functioning within the scope of his authority in pursuit of immune decision–making powers. In this latter context, *Price* and *Osborn*, supra, are similar.

John D. Charles was killed when the car he was driving collided head on with a snowplow working on the interstate highway against traffic and which was, when struck, obscured by a cloud of snow created by a passing truck. Charles' estate and the owner of the car Charles had been driving sued Lawson, the snowplow operator. Lawson, employed by the highway depart-

---

13. We made two apparently contradictory statements where, in *Denver Buick*, supra, at 465 P.2d at 513, we said:

"When duties are imposed upon a public officer, such as a county clerk, by law rather than by some appointing power, such duties are usually governmental and not ministerial.",

and in *Spaniol Ford*, supra, at 478 P.2d at 599:

"... [A] duty is ministerial when the law prescribes the mode and occasion of its performance with such certainty that nothing is left to judgment or discretion—a duty not involving official discretion...."

14. *Minge*, supra, fn. 10, at p. 243.

ment, moved for summary judgment on the dual grounds that he enjoyed the State's immunity and that he had not been negligent. He supported his motion with an affidavit from the chief engineer of the state highway department. The affidavit asserts that Lawson, in driving the snowplow against traffic, was following established highway commission procedures. No counteraffidavit was filed and the district court awarded summary judgment to Lawson on the ground that he enjoyed immunity from suit. On appeal, we said that *Price*, *supra*, supported the district court's judgment, but, in so holding, we found it appropriate to survey the law in this area. The opinion acknowledged *Palmer v. Marceille*, 106 Vt. 500, 175 A. 31 (1934), in which the plaintiff's car collided with a car negligently parked on the travelled portion of the road by a state highway employee. The Vermont court held that a highway employee was not exempt from personal liability for negligence merely because he was an employee performing governmental work. However, we dismissed that line of authority with this rationale:

> "The rule of the Vermont and other cases just mentioned has not, we think, any application in the case at bar. It must in any event be limited in a case such as before us to a situation in which the employee or officer of the highway department acts independently of and not under the direction and control of the highway department ... It is said in 4 A.L.I. Restatement, Torts, § 888 (1939), as follows:
>
> > " ' * * * While there is no immunity by the mere fact that one is a public officer, there are many situations where a person may be protected by the command of a superior. . . .'
>
> > \* \* \* \* \* \*

"... In any event ... the negligence, if any, in the operation of the snowplow herein was the negligence of the highway commission by reason of the fact that it prescribed the method of operating the snowplow. The operator of that snowplow, whether we call him an officer or employee makes little difference, followed in his operation the directions prescribed by his superior. He was compelled to do so or quit. . . ." *Osborn*, *supra*, 374 P.2d at 205.

*Osborn* does not, therefore, hold that a state employee, while engaged in state work, is automatically entitled to immunity from personal liability for negligent acts. *Osborn* stands for the isolated notion that a public employee, even working under negligent supervision, where the risk of public injury is inherent, will enjoy immunity from tort liability. It does not follow that if the employee made a negligent mistake—absent negligent instruction—the employee could not be held liable as performing an unprotected ministerial duty.

Neither *Price* nor *Osborn* can be viewed as holding that a negligent public employee performing purely imperative or ministerial duties will be immune from their negligent acts.

In *Denver Buick* and *Spaniol Ford*, supra, the county clerks were sued for the negligent performance of their official duties. In those cases, while some loose usage of the terms "governmental," "ministerial," and "proprietary" may have been employed, the sense of what we said is that the nature of the duties in which the clerks were engaged and out of which the alleged tortious acts evolved were discretionary rather than ministerial.[15] In both cases, we indicated

---

**15.** In this context, the following from footnote 88, at page 246, of the *Minge* article bears repeating:

> "Since immunity customarily attaches to governmental and discretionary functions and liability to proprietary and ministerial functions, one is tempted to ask what the result might be for a function which is governmental–ministerial or discretionary–proprietary hybrid. For an example of such an

analysis of the Minnesota case law see Peterson, *Governmental Responsibility for Torts in Minnesota*, 26 Minn.L.Rev. 293, 296–99 (1942). Courts apparently have been confused in attempts to combine the concepts. Kramer [Kramer, *The Governmental Tort Immunity Doctrine in the United States 1790–1955*, 1966 U.Ill.L.F. 795, 801–05], *supra* note 10, at 820.21. It appears that traditionally the governmental–proprietary distinction has

that the clerks might be liable had they been performing purely ministerial acts. We did not, however, offer any rationale for determining how to identify discretionary or ministerial functions.

We here observe and emphasize that in determining the presence or absence of public–employee immunity, where the employee is charged with negligence, the language which should properly be employed is ministerial v. discretionary–*not* ministerial v. governmental (as in *Osborn*).

### Holding

Pitting the absence of factual development in this case against the ministerial–discretionary test, it must be clear that the district judge, when he granted a motion to dismiss, thus foreclosing the development of an evidentiary record, held that Mr. Malovich was immune from tort liability as a matter of law–simply because he was a State–employed public officer.

According to the authorities cited herein, it must be just as clear that there are various fathomable fact circumstances which could result in Mr. Malovich's liability, even though he is a State officer with subject–matter jurisdiction over the act in question. Given the opportunity, the plaintiffs might have been able to show that Malovich acted maliciously and wantonly and in bad faith, resulting in plaintiffs' damages, in which case immunity would not serve as a defense. The Oylers might conceivably have been able to introduce evidence to the effect that, notwithstanding the applicable statutes giving Malovich jurisdiction over the subject matter of hiring and firing, nevertheless, because of budgetary, personnel or other reasons, Mr. Malovich was acting in excess of his authority. In such case, immunity would not reach out to save the defendant from liability. It might be shown that the particular function in which Malovich was engaged, and of which the Oylers complain, was purely ministerial in its nature and that the defendant was negligent in the performance thereof. Malovich could, in this fact context, be liable.

■ We do not even intimate that Mr. Malovich has committed any act from which liability will flow. We don't know, and the trial court could not know this, because there is no record. We only say that there are circumstances in which a public officer *can* be liable, and there is nothing on the face of the pleadings or in supporting affidavits (as was the case with the other defendant, The State of Wyoming) which–at this stage–permits any court or fact finder to draw a liability conclusion one way or the other. Since the court foreclosed the development of the record by sustaining appellees' motion to dismiss–the matter must be reversed and remanded for further proceedings not inconsistent with this opinion.

Affirmed as to The State of Wyoming; reversed and remanded as to Malovich.

RAPER, Chief Justice, dissenting in part and concurring in part, with whom BENTLEY, District Judge, joins.

I dissent as to the court's holding that appellee Malovich, a state agent has no immunity; it should not have reached that issue because appellants' complaint fails to state a claim, aside from any issue of immunity, assuming the facts there stated are true, in that an agent has no personal liability when acting for a disclosed principal.

I point out that the majority has decided this case upon the basis that the action is one in negligence and that Malovich, as a state employee, has no immunity from tort liability. The district court found that the motion to dismiss should be allowed because the defendants "are immune from suit because of sovereign immunity." No particular type of action was mentioned. The trial

been applied to questions of municipal liability and the discretionary–ministerial distinction to questions of officer or employee liability. *See* 3 Davis, Administrative Law, §§ 25.07, 26.01, 26.02 (1958). Generally speaking, the difficulty and arbitrariness of the governmental–proprietary distinction has led to its criticism by the commentators and its abandonment by several jurisdictions. However, most agree that properly applied the discretionary–ministerial distinction is useful and necessary. . . . "

judge never considered the matter of tort liability or any other point. The general rule is that this court will not reverse on a question not considered by the trial court. *Roush v. Roush*, Wyo.1979, 589 P.2d 841; *Knudson v. Hilzer*, Wyo.1976, 551 P.2d 680; *Weber v. Johnston Fuel Liners, Inc.*, Wyo. 1974, 519 P.2d 972; see also, Key No. 169, Appeal & Error, West's Wyoming Digest, for other cases. However, it is one thing to reverse a district court on questions not considered by it and another to affirm for reasons not there considered, as will be further developed herein.

The appellants take the position that the appellees' motion to dismiss was converted to a motion for summary judgment and the appellees indicate that it makes no difference because only a question of law is presented. If only a question of law is presented, this court has said, at least as to summary judgments, the matter is treated as if being originally before this court because it has exactly the same material before it as does the trial court and no fact–finding function is involved. *Centrella v. Morris*, Wyo.1979, 597 P.2d 958. Since a motion to dismiss, as present here, only attacks the complaint in an effort to determine whether a claim is stated, only a question of law is presented. Since only a question of law is presented, we may dispose of it.

The district court does not acquire jurisdiction unless a claim–a cause of action–is stated in the plaintiffs' complaint. *Buckman v. United Mine Workers of America*, 1959, 80 Wyo. 199, 339 P.2d 398, reh. den. 80 Wyo. 216, 342 P.2d 236. Failure of a complaint to state a claim–a cause of action– may be raised for the first time in the supreme court and the point is never waived. *Claughton v. Johnson*, 1934, 47 Wyo. 447, 38 P.2d 612, reh. den. 47 Wyo. 536, 41 P.2d 527. That case was under code pleading, but a motion to dismiss under the Wyoming Rules of Civil Procedure performs the same office as a demurrer. It is the duty of this court to notice and act on jurisdictional matters even though not raised by the parties or the district court. *Tobin v. Pursel*, Wyo.1975, 539 P.2d 361.

While this court has said that immunity from suit is a threshold question, it is my view that at least an equally threshold question is whether a claim is otherwise stated. One cannot stand without the other. If no claim is stated in that light, neither the district court nor this court has jurisdiction. The first and fundamental question in every appeal is jurisdiction. *Gardner v. Walker*, Wyo.1962, 373 P.2d 598. Aside from any question of immunity and negligence, plaintiffs' complaint fails to state a claim. Immunity and negligence must, therefore, retire to the background as unnecessary to a determination of the appeal. Because the failure to state a claim is decisive, it is unnecessary to either discuss or decide the other contentions although they may be of academic interest or potentially determinative of other such cases since they are not requisite to adjudication of this case. *Wallace v. Casper Adjustment Service*, Wyo.1972, 500 P.2d 72; *Druley v. Houdesheldt*, 1956, 75 Wyo. 155, 294 P.2d 351, reh. den. 296 P.2d 251. For an infinite supply of other cases to this effect, see Key No. 843(1), Appeal & Error, West's Digest System.

The majority has structured a fantasized cause of action–a claim–against a state agent as an individual for negligence. Ergo, state employees may now be sued in their individual capacities for negligent conduct. The majority, in its opinion, states that the question is "whether or not, and under what circumstances, the State's employees are or are not immune from tort liability." The majority also holds, "Where a public officer acts in the absence of or in excess of his authority, he may be held personally liable for his wrongdoing." There is no allegation in the amended complaint that Malovich acted outside of his authority. The majority assumes and concludes that the appellants' amended complaint states a cause of action–a claim–in tort. The majority has not stopped with the single question of immunity as its threshold question. It has bound immunity inseparably with a tort action, and then held there is no immunity for those officers

"who work their wrongful ways against those who deserve neither their wrath or their negligence." The whole of the majority opinion is couched in terms of tort.

The majority winds up saying that "there is nothing on the face of the pleadings or in supporting affidavits (as was the case with the other defendant, The State of Wyoming) which–at this stage–permits any court or fact finder to draw a liability conclusion one way or the other." Not so!

The amended complaint filed by the appellants in the district court presented two claims for relief. The first one alleged that "[t]he offer of employment extended by Defendant Malovich on behalf of the Defendant the State of Wyoming was accepted by Plaintiff Jess Oyler" and that, thus, a binding, express and implied employment contract came into existence; and further, the appellees' refusal to perform was a breach of the contract which injured the appellants. As a result, appellants stated a claim for breach of contract accrued to their benefit.

The second claim for relief charged that:

"Defendant Anthony Malovich, individually and acting on behalf of Defendant the State of Wyoming with gross disregard of his duty toward Plaintiffs, negligently induced Plaintiffs into financial obligations made by Plaintiffs in reliance upon Defendants' promise of employment, and/or negligently stood by with full knowledge that Plaintiffs were incurring said financial obligations without making any attempt to advise Plaintiffs of their potential risk."

The appellants have argued, and the majority has agreed, that this claim is a negligence action and that governmental tort immunity can no longer be used as a bar to tort actions brought against either the State or its employees; however, I do not accept that this claim for relief sounds in negligence.

In order to be liable for negligence, a defendant must have failed to perform a duty owed to the plaintiffs. *Maxted v. Pacific Car & Foundry Co.*, Wyo.1974, 527 P.2d 832, 835. This duty can arise by virtue of statute, common law, or contractual relationship. *Brubaker v. Glenrock Lodge International Order of Odd Fellows*, Wyo. 1974, 526 P.2d 52.

Here, the appellants did allege that the appellees breached a duty by negligently inducing the appellants to rely on the promise of employment and/or negligently failing to warn the appellants of the risks inherent in the reliance. But, nowhere in the complaint did the appellants say what was the origin of appellees' duty. On close inspection it would appear to have sprung from the alleged promise; however, under contract law unless the promise becomes a contract there is no duty to perform. And if there is no duty to perform, then no liability can be incurred if performance is not tendered. As stated by Corbin:

"An informal promise without consideration, in any of the senses of that term, creates no legal duty and is not enforceable. * * *" 1 Corbin on Contracts § 114, p. 498.

Thus, in the second claim for relief there was no duty since there was no contract.

However, in order to ameliorate the harshness of this general rule, an exception, known as the doctrine of promissory estoppel, was recognized in *Hanna State & Savings Bank v. Matson*, 1938, 53 Wyo. 1, 77 P.2d 621, 625. There the court quoted the Restatement of Contracts § 90 with approval:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Under this exception, then, the promise is treated as if it were a binding contract. 1A Corbin on Contracts §§ 193–209, pp. 187–271. Clearly the allegations made by appellants do include the necessary elements that must be shown under the doctrine of promissory estoppel.

Nonetheless, the complaint stated numerous times that the defendant Malovich was

acting on behalf of the State. In *Kure v. Chevrolet Motor Division*, Wyo.1978, 581 P.2d 603, 609, this court held:

" * * * An agent who contracts on behalf of a disclosed principal, in the absence of some other agreement to the contrary or other circumstances showing that he has expressly or impliedly incurred or intended to incur personal responsibility, is not liable to the other contracting party. * * * "

In other words, an agent for a disclosed principal does not become a party to the contract. Since, in the facts alleged, Malovich's promise was known to be on behalf of the State, and there is nothing to indicate that he intended to assume the promise of employment personally, Malovich cannot be held to be a party to the contract arising by operation of law, nor for that matter under the express contract alleged in the first cause of action. There is no reason to impose liability on a state employee, an agent of the State, where in private enterprise there is no such liability. Since, in my view, the dismissal of this suit would be appropriate on remand for failure to state a claim, I would affirm the dismissal. The action the court takes here seems to be a waste of judicial time. There is no need to decide issues not necessary to a disposition of the appeal and that are dicta.

I am not concerned about the rule that we will not consider matters raised for the first time on appeal as to the position I take. The reason for my lack of concern is not only that a court has no jurisdiction if a claim is not stated but because of the equally well–recognized rule that in our jurisdiction a judgment will be affirmed on appeal if sustainable on any legal ground appearing in the record. *Wightman v. American National Bank of Riverton*, Wyo.1980, 610 P.2d 1001; *P & M Cattle Co. v. Holler*, Wyo.1977, 559 P.2d 1019; *Crockett v. Lowther*, Wyo.1976, 549 P.2d 303; *Zitterkopf v. Roussalis*, Wyo.1976, 546 P.2d 436; *Peters Grazing Association v. Legerski*, Wyo.1975, 544 P.2d 449, reh. den. 546 P.2d 189; for citations to other cases, see also, Key No. 854(1), Appeal & Error, West's Wyoming Digest. The trial court's ultimate decision carries with it a presumption of correctness.

I concur in dismissal of the cause alleged against the State on the ground of immunity. In reference to the suit against the State upon a contract, it should be noted that though *Biscar v. University of Wyoming Board of Trustees*, Wyo.1980, 605 P.2d 374, mandates the dismissal of the action in contract against the State on the basis of sovereign immunity, on March 7, 1980 § 1–39–104(a), W.S.1977 was amended to waive the defense of sovereign immunity in contract actions. The statute now reads:

"(a) A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112. Any immunity in actions based on a contract entered into by a governmental entity is waived except to the extent provided by the contract if the contract was within the powers granted to the entity and was properly executed. The claims procedures of W.S. 1–39–105 through 1–39–112 apply to contractual claims against governmental entities."

Since this action was commenced prior to the passage of the amendment, the statute does not provide the controlling law for this case. But it should be noted that in the future *Biscar* will no longer control and actions on contract against the State will be permissible within the statutory limits.

I would have affirmed the dismissal of both suits.